## UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE:  THE HONORABLE LISA W. WANG

———————————————————————— :
                                                    :
HANGZHOU EVERNEW MACHINERY &        :
EQUIPMENT COMPANY LIMITED;              :
                                                    :
        Plaintiff,                                :
                                                    :     Court No. 25-00151
        v.                                         :
                                                    :     **<u>PUBLIC VERSION</u>**
UNITED STATES OF AMERICA;                  :     Business Proprietary Information
                                                    :     Deleted from within Brackets **[ ]** on
                                                    :     Page 10
        Defendant,                              :
                                                    :
        and                                        :
                                                    :
LIST INDUSTRIES, INC.;                          :
                                                    :
        Defendant-Intervenor.              :
                                                    :
———————————————————————— :

## <u>PLAINTIFF HANGZHOU EVERNEW MACHINERY & EQUIPMENT COMPANY LIMITED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Respectfully Submitted,

/s/ Camelia C. Mazard
Camelia C. Mazard
Andre P. Barlow
Doyle, Barlow & Mazard PLLC
1825 K St. NW, Suite 950
Washington, DC 20006

Dated:  February 5, 2026

*Counsel to Hangzhou Evernew Machinery*
*& Equipment Company Limited*

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................1

II.    STATEMENT PURSUANT TO RULE 56.2 (c) ....................................1

    A.  The Administrative Determination under Review ............................1

    B.  Issues of Law Presented .........................................................................2

    C.  Summary of Arguments .........................................................................2

III.   STATEMENT OF FACTS RELEVANT TO THE ISSUES.....................................4

IV     STANDARD OF REVIEW ............................................................................4

V.     ARGUMENTS ..............................................................................................8

    A.  Factual Background ............................................................................8

    B.  Commerce's Standing Analysis Was Not in Accordance with Law ………...13

        1.  Commerce's Request to Evernew for Either Audited Financial Statements or Unaudited Financial Statements with Notes Was Not in Accordance with Law As it Did Not Meet Regulatory Obligations ................................................14

        2.  Commerce's Explanation for Applying Total AFA Was Not Satisfactory or Reasonable, but Was Arbitrary and Capricious ...........................................17

        a.  Commerce Singled Out Evernew for Special Scrutiny and Subjected it to Standards Not Applied in Other Reviews or Investigations ..........................19

        b.  Commerce's Actions Were Inconsistent Internally and Self-Contradictory ........................................................................20

        c.  Applying to Evernew New Requirements Was Arbitrary and Capricious…………………………………………………………………21

        3.  Commerce's Interpretation and Application of the Statute with Respect to Evernew is not Due any Deference .......................................................23

VI.    CONCLUSION AND PRAYER FOR RELIEF.......................................24

## <u>TABLE OF AUTHORITIES</u>

### <u>STATUTES</u>

5 U.S.C. § 706(2)(A) …………………………………………………………………6-7
19 U.S.C. § 1516a(2)(B)(iii)……………………………………..………………….......1
19 U.S.C. § 1516a(b) …………………………………………….……………………...23
19 U.S.C. § 1516a(b)(1)(A)……………………………………..……………………...........5
19 U.S.C. § 1516a(b)(1)(B)(i)……………………………………….…………………….....5
19 U.S.C. §1677b(a)………………………………………………………………….............15
19 U.S.C. §1677b(f)(1)(A)…………………………………………….…………………….15
19 U.S.C. §1677e(a)(1)-(2)..……………………………………………….…………………17
19 U.S.C. §1677e(b) …………………………………………………….…………………….17

### <u>REGULATIONS</u>

19 C.F.R. § 351.402(d)(2)..…………………………………………..……………………15, 24

### <u>CASES</u>

*Asociacion Colombiana Exportadores de Flores v. United States*
    40 F. Supp. 2d 466 (Ct. Int'l Trade 1999)…… .....…………………………………… 5
*Atlantic Sugar, Ltd. v. United States*
    744 F.2d 1556 (Fed. Cir. 1984)……... …………....…………………………………… 5
*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*
    419 U.S. 281, 95 S. Ct. 438, 42 L.Ed.2d 447 (1974) ……………………..….…... 6
*Changzhou Wujin Fine Chem. Factory Co., Ltd., v. United States*
    701 F.3d 1367 (Fed. Cir. 2012)……... …………………………………….....…...5-6, 20
*Consol. Bearings Co. v. United States*
    348 F.3d 997 (Fed. Cir. 2003)……...………………………………………………… 6
*Consolidated Edison Co. v. National Labor Relations Board*
    305 U.S. 197, 59 S. Ct. 206, 83 L.Ed. 126 (1938) ……...………………..…………….5
*Diversified Products Corp. v. United States*
    6 C.I.T. 155, 572 F.Supp. 883 (Ct. Int'l Trade 1983) ……..………….…..…………… 5
*F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*
    216 F.3d 1027 (Fed. Cir. 2000)……... …………………………………………...18
*Gallant Ocean (Thailand) Co., Ltd., v. United States*
    602 F.3d 1319 (Fed. Cir. 2010) ……………………….....……………………………18
*Jiangsu Jiasheng Photovoltaic Tech. Co., v. United States*
    38 Ct. Int'l Trade 1632, 28 F. Supp. 3d 1317 (2014)……..…………………...…… 7
*Loper Bright Enter. v. Raimondo*
    144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) …………………………………...7, 23
*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*
    463 U.S. 29, 103 S. Ct. 2856, 77 L.Ed.2d 443 (1983)….. …………………….……6

*Solvay Solexis S.p.A. v. United States*
637 F. Supp. 2d 1306 (Ct. Int'l Trade 2009)…….. ……………………………..14-15
*SKF USA Inc. v. United States*
263 F.3d 1369 (Fed. Cir. 2001) ……..………………………………………….6-7, 23
*SNR Roulements v. United States*
402 F.3d 1358 (Fed. Cir. 2005)…….. …………………………………………....5
*Universal Camera Corp. v. NLRB*
340 U.S. 474, 71 S. Ct. 456 (1951) ……………………...………………………..5

**ADMINSTRATIVE DECISIONS**

*Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative; 2021*
88 Fed. Reg. 75,267 (Nov. 2, 2023).....……………..……..............................15-16
*Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative; 2022*
89 Fed. Reg. 88,957 (Nov. 12, 2024).....……………..……......................16
*Certain Cold-Rolled Carbon Steel Flat Products from The Netherlands*
67 Fed. Reg. 62,112 (Oct. 3, 2002).....……………..……......................................17
*Certain Metal Lockers and Parts Thereof from the People's Republic of China: Antidumping and Countervailing Duty Orders*
86 Fed. Reg. 46,826 (Aug. 20, 2021).....……………..…….......................................19
*Certain Metal Lockers and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2021– 2022*
89 Fed. Reg. 9,123 (Feb. 9, 2024).....……………..……........................................20-21
*Certain Metal Lockers and Parts Thereof from the People's Republic of China: Final Results and Final Rescission, in Part, of Countervailing Duty Administrative Review; 2022*
90 Fed. Reg. 25,023 (June 13, 2025).....……………..….......................1-2, 4, 13, 24
*Certain Metal Lockers and Parts Thereof from the People's Republic of China: Preliminary Results and Intent to Rescind, in Part, of Countervailing Duty Administrative Review; 2022*
89 Fed. Reg. 74,204 (Sep. 12, 2024).....……………..…….......……………..…….12-13
*Certain Metal Lockers and Parts Thereof from the People's Republic of China: Preliminary Results, Preliminary Determination of No Shipments, and Partial Rescission of Antidumping Duty Administrative Review; 2022–2023*
89 Fed. Reg. 74,901 (Sep. 13, 2024).....……………………………………..…….20-21
*Coated Free Sheet Paper from the People's Republic of China: Final Affirmative Countervailing Duty Determination*
72 Fed. Reg. 60,645 (Oct. 25, 2007).....……………..………..…….……………..18
*Frozen Warmwater Shrimp from the People's Republic of China; 2018-2019*
85 Fed. Reg. 83,891 (Dec. 23, 2020).....……....……………..……….....................22
*Initiation of Antidumping and Countervailing Duty Administrative Reviews*
88 Fed. Reg. 71,829 (Oct. 18, 2023) …. ……....…………………..……........8-9
*Ripe Olives from Spain: Final Results of Antidumping Duty Administrative Review; 2018-2019*
86 Fed. Reg. 35,068 (Jul. 1, 2021).....……………………………………..…….....18

## I.     **INTRODUCTION**

The U.S. Department of Commerce ("Commerce" or the "DOC") unlawfully issued Plaintiff Hangzhou Evernew Machinery & Equipment Company Limited ("Evernew" or "Plaintiff") a total adverse facts available rate ("AFA") in its second administrative review of the countervailing duty ("CVD") order on the Certain Metal Lockers and Parts Thereof from the People's Republic of China due to its lack of audited financial statements or unaudited financial statements with notes.  Plaintiff provided to Commerce the financial statements it kept in the ordinary course of business and did not maintain financial statements in either of the forms requested.  Commerce's determination was not in accordance with law, was not reasonable, was arbitrary and capricious, and an abuse of discretion.  Plaintiff requests this court to rule in its favor and asks for a remand of the results of the second administrative review.

## II.     **STATEMENT PURSUANT TO RULE 56.2(c)**

### A.  **The Administrative Determination under Review**

This action is brought pursuant to 19 U.S.C. § 1516a (a)(2)(B)(iii) to contest Commerce's *Certain Metal Lockers and Parts Thereof from the People's Republic of China: Final Results and Final Rescission, in Part, of Countervailing Duty Administrative Review; 2022*, 90 Fed. Reg. 25,023 (Dep't of Commerce June 13, 2025) ("*Final Results*"); Appx2502-2504 (public document), and accompanying Issues and Decision Memorandum ("IDM") for the Final Results of the Countervailing Duty Administrative Review of Certain Metal Lockers and Parts Thereof from the People's Republic of China; 2022 (signed June 6, 2025) ("FIDM"), Appx2468-2501 (public document).

**B.  Issues of Law Presented**

First, whether Commerce's determination to apply total AFA to Evernew in its second administrative review during the period of review ("POR") was in accordance with the law, or unreasonable and/or arbitrary and capricious and otherwise contrary to law.

Second, whether Commerce's refusal to accept Evernew's unaudited financial statements without notes during the POR was unlawful, as it was contrary to Commerce's practice.

**C.  Summary of Arguments**

In the *Final Results* for this review, Commerce applied total AFA to Plaintiff in the second administrative review, even though Evernew prepared and submitted each of its submissions in full compliance with the DOC's requirements and explained multiple times the reasons for not having either audited financial statements, or unaudited financial statement with notes, during the POR.  There are three issues presented: (1) whether Commerce's determination was in accordance with law that Evernew did not provide requested information necessary to determine an accurate CVD rate during the POR; (2) whether Commerce's finding that Evernew significantly impeded this proceeding was unreasonable and capricious; and, (3) whether Commerce's refusal to accept Evernew's unaudited financial statements without notes during the POR was unlawful given that its finding was contrary to Commerce's recent practice in other reviews.

The U.S. Court of International Trade ("CIT") should find Commerce's determination with respect to Evernew was wrong for the following reasons:

First, as discussed further below, Commerce had the facts wrong.  Plaintiff prepared and submitted each of its submissions in a timely manner, with full compliance to Commerce's requirements.

2

Second, after the DOC reversed course from the question it posed in its initial questionnaire and requested either audited financial statements or unaudited financial statements with notes, Plaintiff submitted complete and comprehensive responses explaining its reasons for only submitting Evernew's unaudited balance sheet and income statement without notes. However, despite prior precedent in other reviews where the DOC accepted unaudited balance sheets and income statements to award appropriate separate rates, the DOC applied total AFA to Evernew contrary to its practices in the underlying investigation of metal lockers and in the sister antidumping duty ("AD") review. Specifically, counsel for a mandatory respondent of the subject merchandise in the underlying investigation presented the same data as Plaintiff Evernew in the preliminary segment of this POR, and that exporter received a zero AD margin. However, the DOC assigned an AFA rate to Plaintiff in the final determination of this review that was different from its findings in the preliminary segment of this proceeding, the companion AD review and in this underlying investigation.

Third, the CIT held Commerce cannot ignore or misinterpret substantial evidence on the record. However, Commerce failed to acknowledge Evernew's business practices, the nature of its operations, the company's tax return requirements, and prior tax returns submitted. Instead, Commerce asserted that Evernew provided inconsistent responses to Commerce's questions about the requirements for financial statements based on Petitioner's interpretation of accounting standards and tax return requirements in China. Evernew complied with all of Commerce's requests, and provided Commerce with the same credible documents that had probative value during the underlying investigation, the companion AD review and in other numerous other DOC CVD and AD proceedings. As noted, Evernew only submitted the company's unaudited balance sheet and income statement without notes in the

3

companion AD review, and did not receive an AFA rate. Therefore, Commerce's grounds for applying total AFA in the *Final Results* of this POR were unsupported by substantial evidence and otherwise not in accordance with law.

Fourth, the decision overturning the "Chevron doctrine", allowing significant deference to agency discretion, provides grounds for rejecting Commerce's over-reach in interpreting the DOC's regulations and applying it here. The Supreme Court established that the courts have the authority to interpret regulations and are not to defer to the agency's interpretation. The financial audit process is not mandated by the DOC's regulations. Where a respondent is not required to prepare audited financial statements or unaudited financial statements with notes, Commerce has relied on information provided by the company in its tax returns, for example, to substantiate the reliability of the reported data with an independent third-party.

Commerce ignored regulations, case law and its administrative practices in acting arbitrarily and capriciously. The entire premise used by Commerce to apply total AFA to Evernew was invalid because it was not in accordance with law, and was not made reasonably. Commerce now should be required to use standards that neither are arbitrary nor capricious to determine the appropriate CVD rate for Evernew during this POR. And when it does so, it should find that the application of total AFA to Evernew during the POR was not valid.

### III.    <u>STATEMENT OF FACTS RELEVANT TO THE ISSUES</u>

The statement of facts relevant to these issues is presented as an introduction to the substantive arguments discussed below.

### IV.    <u>STANDARD OF REVIEW</u>

In reviewing a Commerce CVD determination, this Court will hold unlawful determinations that are unsupported by substantial evidence on the record, or not otherwise in

4

accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i); *accord SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed. Cir. 2005).  And where Commerce's methodology is questioned for its accordance with law, "Commerce's decision will be set aside if it is arbitrary and capricious." *Changzhou Wujin Fine Chem. Factory Co. v. United States*, 701 F.3d 1367, 1372 (Fed. Cir. 2012) (hereafter "*Changzhou*").  Both prongs of review are relevant in this case.

First, "{s}ubstantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477, 71 S. Ct. 456, 459 (1951) ("Universal Camera"), *quoting Consolidated Edison Corp. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L.Ed. 126 (1938).  Furthermore, "substantial evidence" must be measured by a review of the record as a whole, "including whatever fairly detracts from the substantiality of the evidence." *Atlantic Sugar, Ltd. v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984) (quotations omitted).

However, "it is appropriate to set aside the ITA's decision when the court 'cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to {its} view.'" *Diversified Products Corp. v. United States*, 6 C.I.T. 155, 161, 572 F.Supp. 883 (Ct. Int'l Trade 1983), *quoting Universal Camera*, 340 U.S. at 488.  Moreover, when substantial evidence is not utilized, such action is tantamount to the use of speculation to make a determination.  *See Asociacion Colombiana Exportadores de Flores v. United States*, 40 F. Supp. 2d 466, 472 (Ct. Int'l Trade 1999) (holding that speculation cannot be a basis for finding substantial evidence on the record).

Second, to this end, the Court will hold as unlawful an administrative decision that is arbitrary, capricious, or an abuse of discretion.  *See* 19 U.S.C. § 1516a(b)(l)(A).  Normally, an agency decision would be arbitrary and capricious "if the agency has relied on factors which

Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S. Ct. 2856, 77 L.Ed.2d 443 (1983) ("*Motor Vehicle Mfrs.*").

It is well-established that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently. *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (quotation marks and citation omitted). An agency "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs.*, 463 U.S. at 48 (citations omitted). Moreover, Commerce acts arbitrarily and capriciously when it "consistently follow{s} a contrary practice in similar circumstances and provide{s} no reasonable explanation for the change in practice." *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003).

"{A} reviewing court must apply both standards {substantial evidence, and arbitrary and capricious or contrary to law}, and "an agency's finding may be supported by substantial evidence," yet "nonetheless reflect arbitrary and capricious action." *Changzhou* at 1377 (*quoting Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 284, 95 S. Ct. 438, 42 L. Ed. 2d 447 (1974)). Therefore, while the substantial evidence standard applies to review of factual determinations, where the Court evaluates an agency's reasoning, it will review it under the arbitrary and capricious standard (or contrary to law) standard." *Id.* (*citing Motor Vehicle Mfrs.*, 463 U.S. at 48–49; *see* Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (2012) (directing that the Court shall "hold unlawful and set aside agency action,

findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law")).

"{W}here the agency is vested with discretion to set the procedure by which it administers its governing statute, the court reviews such decisions for abuse of discretion.…In abuse of discretion review, 'an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.'" *Jiangsu Jiasheng Photovoltaic Tech. Co.*, *v. United States*, 38 Ct. Int'l Trade1632, 1635, 28 F. Supp. 3d 1317, 1323 (2014) (quoting *SKF USA*, 263 F.3d at 1382). Accordingly, Commerce may not exert its authority in an arbitrary or capricious manner.

Specifically, an administering agency's actions cannot be inconsistent internally and self-contradictory. Nor can the agency treat similarly situated parties differently. Nor can it fail to consider an important aspect of a problem. If it does, the agency's decisions are arbitrary and capricious and must be subject to reversal.

Further, in *Loper Bright Enter. v. Raimondo,* 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024) ("*Loper Bright*"), the Supreme Court established that Courts have the authority to interpret regulations and not defer to the agency's interpretation. As the Court states:

> *Chevron* is overruled. Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires. Careful attention to the judgment of the Executive Branch may help inform that inquiry. And when a particular statute delegates authority to an agency consistent with constitutional limits, courts must respect the delegation, while ensuring that the agency acts within it. But courts need not and under the APA may not defer to an agency interpretation of the law simply because a statute is ambiguous.

*Id.* at 2273.

V.    **ARGUMENTS**

A. **Factual Background**

Plaintiff Evernew filed a request for administrative review in these proceedings on

August 31, 2023 ("Letter to Commerce").  Appx1000-1004 (public document).  In that letter,

Evernew requested that Commerce conduct an administrative review of the sales of subject

merchandise made by Evernew from January 1, 2022 through December 31, 2022.  *Id*.

Commerce then initiated reviews of seven exporters/foreign producers for this POR.  *Initiation*

*of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 71,829 (Dep't

of Commerce Oct. 18, 2023) ("*Initiation Notice*").  Appx1005-1015 (public document).

On February 14, 2024, Commerce issued an initial questionnaire to the Embassy of the

People's Republic of China, which indicated Evernew had been selected as a mandatory

respondent ("DOC's Initial Questionnaire").  Appx1016-Appx1135 (public document).  The

DOC's Initial Questionnaire explicitly stated:

> Please provide your company's complete audited financial statements for
> the last three fiscal years.…These should be the official financial
> statements filed with your government. **If there is no such filing**
> **requirement, the financial statements should be those presented to**
> **banks or independent third parties.** The financial statements should
> include the complete set of statements, e.g., income statement, balance
> sheet, cash flow statement, statement of change in equity, all notes thereto,
> and the auditor's opinion. **If you do not prepare audited financial**
> **statements, please provide whatever unaudited financial statements**
> **that are prepared for your board of directors, your shareholders, and**
> **for the government.** *Id*. at III-6 (emphases added).

Evernew's initial questionnaire response ("QR") to part of Section III was submitted on

March 6, 2024, on behalf of Evernew and its cross-owned affiliate Zhejiang Yinghong

Metalware Co., Ltd ("Zhejiang Yinghong") ("Evernew 3/6 Initial QR") at 2-4.  Appx80001-

Appx80016 (confidential record); Appx1136-Appx1147 (public version).  Evernew then filed

the remaining part of its Section III QR on April 19, 2024 ("Evernew's 4/19 QR"). Appx80017-Appx80532 (confidential record); Appx1148-Appx1663 (public version). In Evernew's 4/19 QR, Evernew submitted the unaudited financial statements without notes that it used in its normal course of business for 2020, 2021 and 2022. *Id*. at 7 and Exhs. 3-E. The financial statements provided to the DOC were Evernew's unaudited balance sheets and income statements for the last three years. *Id*. And they were the same set of statements also provided to the DOC in the companion AD review initiated on the same day. *Initiation Notice,* 88 Fed. Reg. 71,829, 71,835. Appx1005-1015 (public document). Evernew also submitted its tax returns for 2021 and 2022 in the same submission. *Id*. at 4-E and V-EN-2.1.

On April 30, 2024, Commerce issued Evernew a supplemental questionnaire ("DOC's Supp Questionnaire"). Appx80533-80540 (confidential record); Appx1664-1671 (public version). In the DOC's Supp Questionnaire, Commerce asked Plaintiff to provide "audited financial statements" for both Evernew and Zhejiang Yinghong, but still instructed Plaintiff as follows: "If you do not prepare audited financial statements, please provide whatever unaudited financial statements that are prepared for your board of directors, your shareholders, and for the government." *Id*. at 4-5. Evernew submitted its response to this supplemental questionnaire on May 31, 2024 ("Evernew 5/31 SQR"). Appx80541-80848 (confidential record); Appx 1672-1979 (public version). In Evernew's 5/31 SQR, Plaintiff provided audited financial statements for Zhejiang Yinghong. *Id*. at 5. However, Plaintiff explained that with respect to Evernew, its submission of unaudited financial statements without notes comprised of only Evernew's 2020-2022 balance sheets and income statements was the company's normal practice, and in compliance with Chinese Law. *Id*.

Commerce issued an additional supplemental questionnaire to Evernew on July 8, 2024

("DOC's 3d Supp Questionnaire"). Appx80849-80856 (confidential record); Appx1980-1987

(public version). The DOC's 3d Supp Questionnaire asked Evernew to explain why it was not

required to prepare audited financial statements and requested either audited financial reports or

*unaudited* financial reports with notes. *Id.* at 6 (emphasis in original). Evernew submitted its

response to the DOC's 3d Supp Questionnaire on July 30, 2024 ("Evernew's 3d SQR").

Appx80857-80977 (confidential record); Appx1988-2108 (public version). In Evernew's 3d

SQR, Plaintiff explained that Evernew did not have unaudited financial reports with notes as it

was not the company's normal course of business, such practice was in compliance with legal

requirements, and not having them aligned with practical purposes. *Id.* at 6.

Commerce once again issued another supplemental questionnaire to Evernew on August

15, 2024 ("DOC's 5th Supp Questionnaire"). Appx80978-80983 (confidential record);

Appx2109-2114 (public version). In the DOC's 5th Supp Questionnaire, the DOC asked

Evernew to explain why it did not have unaudited financial statements with notes and to explain

its understanding of [

]. *Id.* at 5. Evernew submitted its

response to the DOC's 5th Supp Questionnaire on August 21, 2024 ("Evernew's 5th SQR").
Appx80984-81151 (confidential record); Appx2115-2282 (public version).

In Evernew's 5th SQR, Evernew submitted a complete and thorough response explaining,

among other things that: (1) Evernew responded "No" in its tax return to the government in

response to the question about whether the "General Enterprise Financial Statement Format

(2019 Edition)" applied to Evernew, which meant the company did not have to prepare notes

accompanying its financial statements; (2) although the "200 Accounting Standards for Small

10

Business ("Accounting Standards") would be binding on Evernew if it conducted commercial activities involving public participation like a bidding project, the Accounting Standards for small businesses" only governed external reporting in unique situations and did not apply to Evernew because Chinese laws did not require small trading companies to prepare notes accompanying financial statements for its daily internal accounting management or business; (3) Evernew did not maintain unaudited financial statements with notes but provided the DOC with the exact same financial reports provided to the government in its tax returns that were used in its daily operations, where it indicated in the tax return that it was not necessary for Evernew to provide financial statements with notes; (4) other Chinese respondents also provided unaudited financial statements without notes that also included only the income statement and balance sheet but were accepted by the DOC either in the underlying investigation, the companion AD review and/or in other proceedings; and, (5) Evernew could create unaudited financial statement with notes for this POR if the DOC requested, but had not provided such unaudited financial statements with notes because they did not exist. *Id. at 4-6.*

The DOC then calculated a separate total net CVD rate of 15.35% *ad valorem* in the preliminary determination of this review for Evernew "based on information placed on the record of this review". *See* Memorandum to The File Re:  Administrative Review of the Countervailing Duty Order on Certain Metal Lockers and Parts Thereof from the People's Republic of China; 2022; Preliminary Calculation Memorandum for Hangzhou Evernew Machinery & Equipment Company Limited (Sep. 6, 2024).  Appx81152-81238 (confidential record); Appx2283-2369 (public version).  Further, the DOC noted in its accompanying preliminary IDM that between "March 7 and August 21, 2024, Commerce received timely initial and supplemental responses from Hangzhou Evernew and its cross-owned affiliate" Zhejiang

Yinghong.  *See* Decision Memorandum for the Preliminary Results of the Administrative Review of the Countervailing Duty Order on Certain Metal Lockers and Parts Thereof from the People's Republic of China; 2022 (signed Sep. 6, 2024).  Appx2370-2415 (public document). At the end of the preliminary review, without any other requests for information or supplemental questionnaires issued, Commerce preliminarily determined that Evernew's net countervailable subsidy rate for the POR was 15.35% *ad valorem*.  *See Certain Metal Lockers and Parts Thereof from the People's Republic of China: Preliminary Results and Intent to Rescind, in Part, of Countervailing Duty Administrative Review; 2022,* 89 Fed. Reg. 74,204, 74,205 (Dep't of Commerce Sep. 12, 2024) ("*Preliminary Results*").  Appx2416-2419 (public document).

The *Preliminary Results*, relevant to this argument, were based on Evernew's responses to Commerce's initial questionnaire and three supplemental questionnaires.  These supplemental questionnaires focused on whether Evernew needed to provided either audited financial statements or unaudited financial statements with notes during this POR.  Evernew fully answered all the questionnaires issued by Commerce to the best of its ability and never impeded the proceeding.

On October 8, 2024, the DOC issued Evernew another supplemental questionnaire after the *Preliminary Results* were issued ("Sixth Supp Questionnaire").  Appx81239-81243 (confidential record); Appx2420-2424 (public version).  However, the Sixth Supp Questionnaire did not ask Evernew to provide or prepare unaudited financial statements without notes for this segment of the POR.  Petitioner filed a case brief on December 5, 2024 asserting that Commerce should apply total AFA to Evernew.  Appx81244-81267 (confidential record); Appx2425-2448 (public version).  On December 12, 2024, Evernew filed a rebuttal brief explaining why Commerce should deny petitioner's request to apply total AFA to Evernew as the company

acted to the best of ability and complied with all of Commerce's requests for information ("Evernew's Rebuttal Brief"). Appx81269-81286 (confidential record); Appx2449-2467 (public version).

In Commerce's *Final Results*, however, relying on the same relevant information submitted by Evernew to the DOC before it calculated the *Preliminary Results*, the DOC now used a completely different analysis. In the *Final Results,* the DOC decided to apply AFA to Evernew in the final for the following reasons: (1) Evernew did not provide the requested information necessary to determine an accurate CVD rate; (2) Evernew significantly impeded the proceeding; and (3) Evernew did not respond to the DOC's requests for audited financial statements or for unaudited financial statements with notes. *See* FIDM at 9-12. Appx2468-2501 (public document). Relying on its AFA finding, Commerce revised its calculations from the *Preliminary Results* and awarded Evernew a new total AFA rate of 220.95% (*ad valorem*). *See Final Results* at 25,025. Appx2502-2504 (public document).

### B. Commerce's Analysis Was Not in Accordance with Law

Plaintiff Evernew requested an administrative review of its sales of subject merchandise made from January 1, 2022 through December 31, 2022. *See* Letter to Commerce at 1. Appx1000-1004 (public document). However, this review was the first time in either this proceeding or the companion AD proceedings that the DOC requested a mandatory respondent to provide either audited financial statements or unaudited financial statements with notes that were not maintained in the ordinary course of business, and would have had to be created specifically for that segment of a proceeding.

1.  **Commerce's Request to Evernew for Either Audited Financial Statements or Unaudited Financial Statements with Notes Was Not in Accordance with Law As it Did Not Meet Regulatory Obligations**

Commerce applied AFA to Evernew for allegedly providing "inconsistent responses to Commerce's questions on the requirements for financial statements based on accounting standards and tax return requirements in China".  FIDM at 10.  Appx2468-2501 (public document).  In applying total AFA to Evernew, Commerce claimed that "{w}ithout audited financial statements or reliable financial statements with notes, Commerce is unable to determine with certainty whether there were other cross-owned affiliates or usage of other subsidy programs, and further, if Commerce is not able to rely on Hangzhou Evernew's financial statements, then it cannot complete a robust reconciliation of sales denominators."  *Id*. at 9.  Taking all these factors into account, Commerce found that Evernew "significantly impeded this proceeding", and found that the "use of AFA is warranted" for Evernew.  *Id*. at 10 and 23.

This Court specifically held that "{w}hile there is a preference toward audited statements, Commerce's ultimate purpose is to acquire the most complete and accurate financial picture of the company. In fact, unaudited statements are accepted by Commerce when they are prepared in the normal course of business, and not created specifically for a…proceeding." *Solvay Solexis S.p.A. v. United States,* 637 F. Supp. 2d 1306, 1309 (Ct. Int'l Trade 2009) ("*Solvay Solexis*") (Commerce used Italian exporter's unaudited financial statements in review where statements were prepared for Italian tax purposes).

In *Solvay Solexis*, in responding to Commerce's questionnaires for the 17th administrative review, Solvay Solexis provided information from unaudited financial statements prepare in accordance with Italian GAAP.  *Id*. at 1307.  In making its determination, Commerce adjusted Solvay Solexis' reported "G&A expense ratio to reflect the amount of goodwill

depreciation recorded in the company's <u>unaudited</u> financial statements". *Id*. at 1307-08.
(emphasis added). Although CVD proceedings differ from AD proceedings, the same general
statutory provisions regulate the imposition of countervailing duties and reviews.

     Specifically, the statute dictates that when "Commerce determines whether subject
merchandise is being, or is likely to be, sold at less than fair value, the agency makes a fair
comparison between the export price, or constructed export price, and normal value. Tariff Act
of 1930 § 773, 19 U.S.C. §1677b(a) (2006) (the "Act"). And Commerce's regulations
implemented under the Act do not require respondents to provide Commerce either only audited
financial statements or "reliable financial statements with notes". In fact, the regulations only
state that "the Secretary <u>may</u> rely on any appropriate financial reports, <u>including</u> public, audited
financial statements, or equivalent financial reports, <u>and</u> internal financial reports prepared in
the ordinary course of business." *See* 19 C.F.R. §351.402(d)(2) (emphases added). Further, the
Act states that the cost of production normally is calculated "based on the records of the
exporter or producer of the merchandise, if such records are kept in accordance with the
generally accepted accounting principles of the exporting country…and reasonably reflect the
costs associated with the production and sale of the merchandise." 19 U.S.C. §1677b(f)(1)(A);
*see also Solvay Solexis* at 1308-09.

     In other CVD reviews, Commerce's established the baseline rule that the absence of
audited statements is not fatal when reasonably explained and supplemented by other reliable
evidence. In a 2021 CVD review, mandatory respondent Zhongji submitted unaudited balance
sheets and income statements for one of its customers, and explained why that company did not
maintain separate audited financial statements. *Certain Aluminum Foil from the People's
Republic of China: Final Results of Countervailing Duty Administrative; 2021*, 88 Fed. Reg.

75,267 (Dep't of Commerce Nov. 2, 2023), and accompanying IDM (signed Oct. 27, 2023) at

12-15 ("*Certain Aluminum Foil from the People's Republic of China*").   In that CVD review, the

DOC calculated a preliminary CVD rate for Zhongji using unaudited financial statements.   In its

case brief, however, Petitioners argued that the Zhongji's inability to provide audited financial

statements meant Commerce's preliminary determination was unsupported and warranted AFA.

*Id*. at 12.   Commerce, in its final determination, rejected Petitioners' argument and accepted the

unaudited balance sheet and income statement provided by Zhongji as sufficient.   *Id*. at 15.   In

that proceeding, the DOC also explained that it was "Commerce's practice to request audited

financial statements, but Commerce will accept unaudited financial statements in lieu of audited

statements when the respondent has a reasonable explanation for not having audited statements."

*Id*.

In the subsequent CVD review of *Certain Aluminum Foil from the People's Republic of

China*, Zhongji again provided the DOC with an unaudited balance sheet and income statement

for the same customer during the new POR.   *Certain Aluminum Foil from the People's Republic

of China: Final Results of Countervailing Duty Administrative; 2022*, 89 Fed. Reg. 88,957

(Dep't of Commerce Nov. 12, 2024) ("*2022 Aluminum Foil CVD Review*"), and accompanying

IDM (signed Nov. 5, 2024) at 17-18.   In the *2022 Aluminum Foil CVD Review*, the DOC

reaffirmed its position from the prior CVD review that "Zhongji's provision of the unaudited

financial statements and requested accounting information…provided sufficient information for

Commerce".   *Id*. at 18.   The DOC also indicated that it came to this position in the *2022

Aluminum Foil CVD Review* because Zhongji provided the same information in that review as in

the prior review.   *Id*.   Importantly, the DOC indicated in this CVD review that it came to this

decision "{a}fter carefully considering the record and past practice".   *Id*.

16

And in other AD reviews, Commerce also concluded that unaudited financial statements do not challenge the credibility of all data nor warrant an AFA rate. For example, in the investigation of *Certain Cold-Rolled Carbon Steel Flat Products from The Netherlands*, Petitioners argued the DOC did not verify respondent's quantity and value information with audited financial documents or other independent sources, and instead relied on unaudited internal financial records. *Certain Cold-Rolled Carbon Steel Flat Products from The Netherlands*, 67 Fed. Reg. 62,112 (Dep't of Commerce Oct. 3, 2002) ("*Cold-Rolled Steel from the Netherlands*"), and accompanying IDM for the AD Investigation (signed Sep. 23, 2002) at 8. In *Cold-Rolled Steel from the Netherlands*, Petitioners also argued that the respondent's "failure to provide the necessary source documents constitutes a failure to act to the best of its ability." *Id*. at 9. However, Commerce disagreed with the Petitioner, deciding that "{a}pplying total facts available in this investigation would be a drastic measure and is usually applied in cases where there are 'persistent and pervasive' gaps in the data. *Id*. Because Commerce could reconcile respondent's quantity and value with the unaudited financial statements prepared for 2001, Commerce distinguished this case "from other cases where gaps in the record were so 'persistent and persuasive' that Commerce disregarded all of the data submitted." *Id*. Consequently, Commerce did not calculate respondent's margin on total facts available.

## 2. Commerce's Explanation for Applying Total AFA Was Not Satisfactory or Reasonable, but Was Arbitrary and Capricious

Commerce only may apply AFA if (1) necessary information is not available on the record or (2) a party withholds information, fails to provide requested information by the deadline, significantly impedes a proceeding, or provides unverifiable information. 19 U.S.C. §1677e(a)(1)-(2). If one of these criteria is met, Commerce may apply an adverse inference if a party failed to cooperate to the best of its ability. 19 U.S.C. §1677e(b). The CIT clarified the

circumstances under which Commerce may exercise this authority–AFA only may be used to fill gaps necessary to complete the factual record and to find that the elements of the statute have been satisfied.  *See, e.g., Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1325 (Fed. Cir. 2010).  Though Commerce's discretion is great in the case of respondents it deems uncooperative, "Commerce's discretion in these matters, however, is not unbounded."  *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). In the absence of verifiable sales values to use as denominators in a subsidy rate calculation, as an alternative, Commerce could have used the highest available subsidy rates from the other respondent in the final determination of this review, Xingyi.  *See Final Results* at 25, 025. Appx2502-2504 (public document).  This method would have been consistent with the DOC's approach in *Coated Free Sheet Paper from the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 72 Fed. Reg. 60,645 (Dep't of Commerce Oct. 25, 2007), and accompanying IDM (signed Oct. 12, 2007) at Comm. 24.  In that case, the DOC used the highest rates listed for subsidy programs of the other exporter in that proceeding.  *Id*.

Commerce also stated in prior reviews, such as in the *2018-2019 Administrative Review of Ripe Olives from Spain*, that "{a}lthough independently audited data may offer some additional degree of reliability, it is not uncommon for Commerce to rely on information that the respondent reports using unaudited data."  *See Ripe Olives from Spain: Final Results of Antidumping Duty Administrative Review; 2018-2019*, 86 Fed. Reg. 35,068 (Dep't of Commerce Jul. 1, 2021) and accompanying IDM (signed June 25, 2021) at 54.  Given past precedent, Commerce should not have applied such a punitive total AFA rate to Evernew, who was not required to prepare audited financial statements or unaudited financial statements with

notes.  Yet Commerce applied an aberrational and uncorroborated AFA rate to Evernew based
on a factor that was not delineated in any regulation, case law or administrative proceeding.

### a. Commerce Singled Out Evernew for Special Scrutiny and Subjected it to Standards Not Applied in Other Reviews or Investigations

Evernew was the subject of special scrutiny that was not directed toward another
mandatory respondent in the underlying investigation, and that normally is not undertaken by
Commerce in other contexts.  While Evernew understands that Commerce needs to substantiate
the reliability of reported data with an independent third-party, the standard should not be, and
usually is not, the "high hurdle" applied to Evernew.

For the most part, none of these standards were applied to other interested parties –
such as another mandatory respondent in the underlying investigations.  In Evernew's 5th Supp
QR and in Evernew's Rebuttal Brief, Evernew provided Commerce with a specific example of
how Commerce applied a different standard to Evernew than it applied to its analysis of
another party.  Specifically, in the underlying *Metal Lockers from China* investigation, for
example, Commerce accepted unaudited financial statements that were submitted by a
mandatory respondent without notes.  *See* Evernew's 5th SQR at 5 and nn.5-6.  Appx80984-
81151 (confidential record); Appx2115-2282 (public version); *see also* Evernew's Rebuttal
Brief at 2-3 and nn.5-6.  Appx81269-81286 (confidential record); Appx2449-2467 (public
version); *cf. Certain Metal Lockers and Parts Thereof from the People's Republic of China:
Antidumping and Countervailing Duty Orders*, 86 Fed. Reg. 46,826 (Dep't of Commerce Aug.
20, 2021) ("*Metal Lockers from China*").  Commerce not only accepted those unaudited
financial statements without notes, but that mandatory respondent received a zero-dumping
margin.  *Metal Lockers from China* at 46,827.

Evernew, on the other hand, was subject to arbitrary and capricious "audited financial statement" and "unaudited financial statements with notes" criteria. As noted above, Commerce's analysis should have recognized that although independently audited data may offer some additional degree of reliability, it is not uncommon for Commerce to rely on information that the respondent reports using unaudited data. Evernew consistently maintained to the DOC that it provided to Commerce the financial statements it kept in the ordinary course of business, as it did not maintain financial statements in the forms requested. These financial documents also were legitimate, and consistent with the responses on Evernew's tax returns.

### b. Commerce's Actions Were Inconsistent Internally and Self-Contradictory

As noted above, when Commerce's methodology is challenged on the ground that it is not in accordance with law, this Court must look to see whether the agency's decision was arbitrary and capricious, reviewing that decision under "the Administrative Procedure Act and any other applicable law." *Changzhou*, 701 F.3d at 1374 (citations omitted). While Evernew recognizes Commerce's duty to analyze the requirements for financial statements based on accounting standards and tax return requirements in China, Commerce's analysis in this case treated a similarly situated party differently.

As indicated in Evernew's 5th SQR and in Evernew's Rebuttal Brief, Evernew was not issued an AFA rate due to the lack of audited financial statements provided to Commerce in the companion AD review. *See* Evernew's 5th SQR at 6 and n.7. Appx80984-81151 (confidential record); Appx2115-2282 (public version); *see also* Evernew's Rebuttal Brief at 3 and n.7. Appx81269-81286 (confidential record); Appx2449-2467 (public version); *accord Certain Metal Lockers and Parts Thereof from the People's Republic of China: Preliminary Results, Preliminary Determination of No Shipments, and Partial Rescission of Antidumping Duty*

20

*Administrative Review; 2022–2023*, 89 Fed. Reg. 74,901, 74,903 (Dep't of Commerce Sep. 13, 2024); *Certain Metal Lockers and Parts Thereof From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2021– 2022*, 89 Fed. Reg. 9,123 (Dep't of Commerce Feb. 9, 2024), and accompanying IDM (signed Feb. 2, 2024) (partial adverse inferences applied to Evernew for other reasons) at Comm. 4.  In the preliminary segment of that sister proceeding, Evernew provided Commerce with unaudited financial statements because audited financial statements were not available.  *Id*.  Commerce never asked Evernew to provide audited financial statements or unaudited financial statements with notes, in any supplemental questionnaires issued to Evernew in either the preliminary or final stage of that review.  *Id.*  Nor did Petitioner file comments requesting such documents.

So, to be consistent between proceedings regarding the same products, Commerce also should have accepted Evernew's unaudited financial statements without notes in this segment of this proceeding.  If Commerce needed Evernew to create a financial statement with notes solely for the final phase of Commerce's CVD investigation, Evernew could have done so.  However, Commerce's regulations only request internal financial reports prepared in the ordinary course of business, and Evernew provided to the DOC the financial statements it maintained in its normal course of business, which also had been provided to the government in its tax returns.

As such, Evernew did not provide "inconsistent responses to Commerce's questions" in this proceeding, as Commerce found.  To the contrary, it was Commerce's final AFA rate to Evernew that was inconsistent internally, and self-contradictory from its prior practice.

### c.  Applying to Evernew New Requirements Was Arbitrary and Capricious

Commerce also claimed that Evernew significantly impeded this proceeding.  FIDM at 10.  Appx2468-2501 (public document).  To the contrary, Evernew tried its best to submit

21

information as accurately as possible.  And it responded to every single questionnaire and supplemental questionnaire issued by the DOC.

In the review of *Certain Frozen Warmwater Shrimp from the People's Republic of China*, Commerce determined that "no necessary information is missing from the record" although the respondent did not provide audited financial statements.  *See Final Results of the Antidumping Duty Administrative Review of Certain Frozen Warmwater Shrimp from the People's Republic of China; 2018-2019*, 85 Fed. Reg. 83,891 (Dep't of Commerce Dec. 23, 2020), and accompanying IDM (signed Dec. 17, 2020) at 14.  In that proceeding, Commerce found that "{w}hile Shantou Red Garden Foods provided unaudited financial statements, we were able to tie the sales shown on these statements to an outside source using Shantou Red Garden Foods' Value Added Tax returns".  *Id*. n. 64.  Although AD proceedings have differing considerations than CVD proceedings, Evernew did not deprive Commerce of necessary information because it also could have tied the unaudited financial statements without notes provided by Evernew to other "reliable" documents provided by Evernew in this CVD proceeding.

Similarly, the sales shown on Evernew's unaudited financial statements without notes also could have been tied to the figures provided by Evernew in its 2021 and 2022 tax returns perfectly, which Evernew submitted to the government, and also in prior submissions in this POR.  *See, e.g.*, Evernew's 4/19 QR at 10 and Exhs. 3-E, 4-E and V-EN-2.1.  Appx80017-Appx80532 (confidential record); Appx1148-Appx1663 (public version); *accord* Evernew's 5th Supp QR at 4 and n.1.  Appx80984-81151 (confidential record); Appx2115-2282 (public version); Evernew's Rebuttal Brief at 3 and n.11.  Appx81269-81286 (confidential record); Appx2449-2467 (public version).  Specifically, Evernew's sales information provided for both

2021 and 2022 in its unaudited financial statements without notes could have been reconciled to sales information provided to an outside source by Evernew in its 2021 and 2022 tax returns, for example. *Compare* Evernew's 4/19 QR at Exh. 3-E, *with* Exhs. 4-E, *and* V-EN-2.1. As such, Evernew's unaudited financial statements without notes also could have been used to determine the accuracy and completeness of Evernew's QRs for cross-ownership submissions and/or reported non-use of programs.

Contrary to the standard set in *SKF USA*, Commerce never offered a reason for treating similar situations differently. Evernew understands that Commerce has been given discretion in the past on what constitutes an appropriate financial report under the regulations, but Commerce's interpretation and application of its analysis with respect to Evernew was arbitrary and capricious. Audited financial statements or unaudited financial statements with notes were not required for Commerce to determine whether there were other cross-owned affiliates or usage of other subsidy programs. Commerce clearly applied a different standard to Evernew, with higher hurdles than it did for other proceedings. Therefore, Commerce's decision to apply total AFA to Evernew on these arbitrary standards was flawed significantly, and did not justify a finding that "Evernew significantly impeded this proceeding".

### 3. Commerce's Interpretation and Application of the Statute with Respect to Evernew is not Due any Deference

The seminal question is whether Commerce's interpretation and application of the regulations with respect to Evernew is due any deference. This Court must decide ultimately whether Commerce's decision was "in accordance with law". *See* 19 U.S.C. § 1516a(b). To that effect, this Court must take notice of the decision overturning the so-called "Chevron doctrine," allowing significant deference to agency discretion, which provides further grounds for rejecting

Commerce's over-reach in interpreting the regulations and applying them to Evernew. In *Loper Bright*, the Supreme Court established that Courts are not to defer to the agency's interpretation.

It is clear that Commerce overstepped its authority here. "Inconsistent responses" were not present in the instant proceeding and Evernew did not impede this proceeding significantly in any way. This Court should remand this final determination back to the DOC to find Evernew's submission of unaudited financial statements without notes during the POR was in accordance with law, pursuant to 19 C.F.R. §351.402(d)(2), and recalculate Plaintiff's CVD margin.

## VI.    CONCLUSION AND PRAYER FOR RELIEF

For the foregoing reasons, the Court should find Commerce's *Final Results* were not in accordance with law, nor reasonable, with respect to the determinations that Evernew (1) did not provide the proper financial statements based on accounting standards and tax return requirements in China; (2) did not provide the requested information that was necessary to determine an accurate CVD rate during the POR; and, (3) significantly impeded this proceeding. Plaintiff also requests that the Court remand this action to Commerce for redetermination with instructions to find that Evernew's submission of unaudited financial statements without notes during the POR was in accordance with law, and respectfully requests that Commerce recalculate Plaintiff's CVD margin consistent with this Court's opinion.

Respectfully Submitted,

/s/ Camelia C. Mazard
Camelia C. Mazard
Andre P. Barlow
**Dated**: February 5, 2026                    Doyle, Barlow & Mazard PLLC
1825 K St. NW, Suite 950
Washington, DC 20006

*Counsel to Hangzhou Evernew Machinery & Equipment Company Limited*

## **Word Count Certificate of Compliance**

This brief has been prepared in a proportionally spaced type face using Microsoft Word 2016 in Times New Roman, 12-point font.

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth therein. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 7,705 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Camelia C. Mazard
Camelia C. Mazard
Andre P. Barlow

Dated:  February 5, 2026

Doyle, Barlow & Mazard PLLC
1825 K St. NW, Suite 950
Washington, DC 20006

*Counsel to Hangzhou Evernew Machinery & Equipment Company Limited*