**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE LISA W. WANG, JUDGE

| | | |
|---|---|---|
| HANGZHOU EVERNEW MACHINERY & EQUIPMENT COMPANY LIMITED, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 25-00151 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LIST INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

## **ORDER**

Upon consideration of the motions for judgment upon the agency record filed by plaintiff, all responses thereto, the administrative record, and other pertinent papers, it is hereby

ORDERED that the motion is DENIED; and it is further

ORDERED that the Department of Commerce's final results in this matter are sustained; and it is further

ORDERED that judgment is entered in favor of the United States.

Dated: _____, 2026 _____

New York, NY JUDGE

**TABLE OF CONTENTS**

RULE 56.2 STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
I.     The Administrative Determination Under Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
II.    Issues Presented for Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
I.     Initiation and Respondent Selection. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
II.    Hangzhou Evernew's  Responses to Initial and Supplemental Questionnaires . . . . . . . . 3
III.   In The *Preliminary Results*, Commerce Preliminarily Relies on Hangzhou Evernew's
       Balance Sheet And Income Statements And Issues A Sixth Supplemental Questionnaire.7
IV.    Parties Submit Case and Rebuttal Briefs in Advance of the *Final Results*. . . . . . . . . . .8
V.     Commerce Publishes the *Final Results* and Applies Total AFA to Hangzhou Evernew . .9
SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
I.     Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
II.    Commerce Properly Applied Facts Available to Hangzhou Evernew in Calculating
       Hangzhou Evernew's Subsidy Rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
       A.    Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
       B.    Hangzhou Evernew's Failure to Provide Audited Financial Statements Or
             Unaudited Financial Statements With Notes Warranted The Use of Total Facts
             Available. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
             1.   Hangzhou Evernew's Audited Financial Statements Were Necessary
                  Information And Hangzhou Evernew Deprived Commerce of The
                  Opportunity to Determine The Accuracy And Completeness of Hangzhou
                  Evernew's Questionnaire Responses. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
                  a.   The Aluminum Foil from China determinations support Commerce's
                       decision to apply facts available to Hangzhou Evernew . . . . . . . . . . 19
                  b.   *Solvay Solexis* does not undermine Commerce's decision to apply facts
                       available to Hangzhou Evernew . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
                  c.   The *Cold-Rolled Steel from the Netherlands* determination does not
                       undermine Commerce's decision to apply facts available to Hangzhou
                       Evernew. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
             2.   Hangzhou Evernew Withheld The Financial Statements Requested And
                  Significantly Impeded The Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25
             3.   Commerce's Request for Audited Financial Statements Or Unaudited
                  Financial Statements With Notes Was Not Arbitrary Or Capricious . . . . . . .27
III.   Commerce Properly Applied AFA to Hangzhou Evernew in Calculating Hangzhou
       Evernew's Subsidy Rate. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
       A.   Legal Standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .30
       B.   Commerce Properly Determined That Hangzhou Evernew's Failure To Provide
            Requested Financial Statements Warranted An Adverse Inference . . . . . . . . . . .31
            1.   Hangzhou Evernew's Difficulty in Satisfying Commerce's Request for
                 Information Is Irrelevant to Commerce's Ability to Apply AFA in This
                 Instance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
            2.   *Loper Bright* Does Not Disturb Commerce's *Final Results* . . . . . . . . . . . . . .34
CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# TABLE OF AUTHORITIES

**Statutes and Regulations**

19 C.F.R. § 351.303 ............................................................................................. 13

19 C.F.R. § 351.402 .............................................................. 18-19, 24, 35, 36

19 U.S.C. §1677b ............................................................................................... 18

19 U.S.C. § 1516a ....................................................................................... 12, 36

19 U.S.C. § 1671 ............................................................................................... 24

19 U.S.C. § 1677 ............................................................................................... 24

19 U.S.C. § 1677a ............................................................................................. 24

19 U.S.C. § 1677e ......................................... 13, 14, 15, 17, 26, 28, 31

19 U.S.C. § 1677m ........................................................................................... 14

67 Fed. Reg. 62,112 ......................................................................................... 25

86 Fed. Reg. 46,826 ........................................................................................... 3

88 Fed. Reg. 16 75,267 .................................................................................... 19

88 Fed. Reg. 71,829, 71,837 ..................................................... 4, 4, 5, 7, 8

89 Fed. Reg. 74,204, 74,205 .................................................................... 9, 10

89 Fed. Reg. 88,957 ......................................................................................... 19

90 Fed. Reg. 25,023 ........................................................................................... 3

90 Fed. Reg. at 25,024 ..................................................................................... 10

90 Fed. Reg. at 25,024-25 ................................................................................ 29

90 Fed. Reg. at 25,025 ............................................................................... 10, 11

**Cases**

*AG Der Dillinger Huttenwerke v. United States*,
140 F.4th 1364 (Fed. Cir. 2025) ................................................................. 13

*Al Ghurair Iron & Steel LLC v. United States*,
65 F.4th 1351 (Fed. Cir. 2023) ........................................................ 19-20, 21

*Bebitz Flanges Works Pvt. Ltd. v. United States*,
433 F. Supp. 3d 1297 (Ct. Int'l Trade 2020) ........................................... 19

*BlueScope Steel Ltd. v. United States*,
548 F. Supp. 3d 1351 (Ct. Int'l Trade 2021) ........................................... 14

*Cleo Inc. v. United States*,
501 F.3d 1291 (Fed. Cir. 2007) ................................................................. 13

*Consol. Edison Co. of N.Y. v. NLRB*,

305 U.S. 197 (1938) ......................................................................................... 12

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966) ......................................................................................... 12

*Dalian Meisen Woodworking Co., Ltd. v. United States*,
571 F. Supp. 3d 1364 (Ct. Int'l Trade 2021) ................................................... 13

*Essar Steel Ltd. v. United States*,
721 F. Supp. 2d 1285 (Ct. Int'l Trade 2010) ................................................... 17

*Giorgio Foods, Inc. v. United States*,
2024 WL 3534491 (Ct. Int'l Trade 2024) ....................................................... 21

*Jindal Poly Films v. United States*,
365 F. Supp. 3d 1379 (Ct. Int'l Trade 2019) ................................................... 14

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)(Loper Bright) ................................................................. 36

*Mukan Ltd. v. United States*,
767 F.3d 1300 (Fed. Cir. 2014) ....................................................................... 13

*Ningbo Dafa Chem. Fiber Co. v. United States*,
580 F.3d 1247 (Fed. Cir. 2009) ....................................................................... 12

*Nippon Steel Corp. v. United States*,
337 F.3d 1373 (Fed. Cir. 2003) ................................................................. 31, 32

*Papierfabrik August Koehler SE v. United States*,
843 F.3d 1373 (Fed. Cir. 2016) ....................................................................... 31

*POSCO v. United States*,
353 F. Supp. 3d 1357 (Ct. Int'l Trade 2018) ................................................... 29

*Qingdao Sea-Line Trading Co., Ltd. v. United States*,
766 F.3d 1378 (Fed. Cir. 2014) ................................................................. 20, 34

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001) ....................................................................... 28

*Solvay Solexis S.p.A. v. United States*,
637 F. Supp. 2d 1306 (Ct. Int'l Trade 2009) ............................................. 18, 18

*United States v. Eurodif S.A.*,
555 U.S. 305 & n.6 (2009) ............................................................................... 12

*Uttam Galva Steels Limited v. United States*,
476 F. Supp. 3d 1387 (Ct. Int'l Trade 2020) ................................................... 24

*Zenith Electronics Corp. v. United States*,

988 F.2d 1573 (Fed. Cir. 1993) ............................................................................................ 13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE LISA W. WANG, JUDGE

| | | |
|---|---|---|
| HANGZHOU EVERNEW MACHINERY & EQUIPMENT COMPANY LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 25-00151 |
| UNITED STATES, | ) ) | PUBLIC |
| Defendant, | ) ) ) | Business Proprietary Information Redacted from Pages 7, 15 |
| and | ) ) | |
| LIST INDUSTRIES, INC., | ) ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S**
**MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Pursuant to Rule 56.2 of the Rules of the United States Court of International Trade,

defendant, the United States, respectfully responds to the motion for judgment on the agency

record filed by plaintiff, Hangzhou Evernew Machinery & Equipment Company Limited

(Hangzhou Evernew).  Hangzhou Evernew challenges the United States Department of

Commerce's (Commerce) *Final Results* in the second administrative review of the

countervailing duty order on certain metal lockers and parts thereof (metal lockers) from the

People's Republic of China (China).  Specifically, Hangzhou Evernew challenges Commerce's

application of facts available with an adverse inference (AFA) in calculating Hangzhou

Evernew's estimated subsidy rate.  As explained below, the motion should be denied because

Commerce's final results are supported by substantial evidence and are otherwise in accordance

with law.

1

**RULE 56.2 STATEMENT**

**III.    The Administrative Determination Under Review**

Hangzhou Evernew challenges Commerce's final results of the second administrative review of the countervailing duty order on metal lockers from China. *See Certain Metal Lockers and Parts Thereof From the People's Republic of China: Final Results and Final Rescission, in Part, of Countervailing Duty Administrative Review; 2022*, 90 Fed. Reg. 25,023 (Dep't of Commerce June 13, 2025) (*Final Results*), and accompanying Issues and Decision Memorandum (IDM).  The period of review is January 1, 2022, through December 31, 2022.  IDM at 1, APPX2429.  The review covers nine producers and/or exporters of subject merchandise, including two mandatory respondents.

**IV.    Issues Presented for Review**

1.    Whether Commerce properly used total facts otherwise available in calculating Hangzhou Evernew's subsidy rate when Hangzhou Evernew had failed to provide audited financial statements as requested by Commerce.

2.    Whether Commerce properly applied an adverse inference in calculating Hangzhou Evernew's subsidy rate when Hangzhou Evernew was required under Chinese law to keep audited financial statements but failed to provide them to Commerce.

**STATEMENT OF FACTS**

**VI.    Initiation and Respondent Selection**

On August 20, 2021, Commerce published the countervailing duty (CVD) order on certain metal lockers and parts thereof (metal lockers) from China.  *See Certain Metal Lockers and Parts Thereof from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 86 Fed. Reg. 46,826 (Dep't of Commerce Aug. 20, 2021) (*Order*).  On October 18,

2

2023, having received timely requests for review, Commerce initiated the second administrative review of the *Order* for the period of review from January 1, 2022, through December 31, 2022. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 88 Fed. Reg. 71,829, 71,837 (Dep't of Commerce Oct. 18, 2023), APPX1005-1015.  Following initiation, Commerce selected Hangzhou Evernew and Xingyi Metalworking Technology (Zhejiang) Co., Ltd. (XMT) as the mandatory respondents in this administrative review,[1] and issued the Initial Questionnaire to the Government of China, with instructions to forward the Initial Questionnaire to Hangzhou Evernew.  *See Preliminary Results* PDM at 3, APPX2337; Commerce's Letter, "Countervailing Duty Questionnaire," dated February 14, 2024 (Initial Questionnaire), APPX1016.

**VII.    Hangzhou Evernew's  Responses to Initial and Supplemental Questionnaires**

Section III of Commerce's Initial Questionnaire instructs companies to "provide {their} complete audited financial statements for the last three fiscal years."  Initial Questionnaire at III-6, APPX1102.  These financial statements "should be the official financial statements filed with {the} government."  *Id.*  However, "if there is no such filing requirement, the financial statements should be those presented to banks or independent third parties."  *Id.*  The Initial Questionnaire then lists examples of information required for a complete set of statements: "income statement, balance sheet, cash flow statement, statement of change in equity, all notes thereto, and the auditor's opinion."  *Id.*  Finally, the Initial Questionnaire instructs companies that if they "do not prepare audited financial statements," then they should "provide whatever

---

[1] XMT, does not challenge the final results; therefore, we discuss the factual background only with respect to Hangzhou Evernew.

unaudited financial statements that are prepared for" the company's "board of directors, {}

shareholders, and for the government." *Id.*

Hangzhou Evernew responded to Commerce's Initial Questionnaire and provided what it

characterized as financial statements for 2020, 2021, and 2022. *See* Hangzhou Evernew's Letter,

"Response to the Remaining Part of Section III of the Countervailing Duty Questionnaire," dated

April 19, 2024, at 7 and Exhibit 3-E (Initial Questionnaire Response), APPX1166. Upon review,

however, Commerce observed that Hangzhou Evernew had only provided "balance sheets and

income statements for the last three years, not full financial statements" as requested. *Compare*

Commerce's Letter, "Initial Questionnaire Response Supplemental Questionnaire," dated April

30, 2024, at 4 (Question 5) (First Supplemental Questionnaire), APPX 1669, *with* Initial

Questionnaire at III-6, APPX1102 (requiring "income statement, balance sheet, cash flow

statement, statement of change in equity, all notes thereto, and the auditor's opinion), *and* Initial

Questionnaire Response at 7, and Exhibit 3-E, APPX1166. Thus, Commerce instructed

Hangzhou Evernew, again, to provide a complete set of audited financial statements or its

unaudited financial statements "prepared for {its} board of directors, {its} shareholders, and for

the government," if it did not prepare audited financial statement. First Supplemental

Questionnaire at 4, Appx1669.

In response to this question, Hangzhou Evernew stated that "{a}ccording to Chinese law,

a company shall formulate a financial report audited by an accounting firm only when the

company suits special conditions provided by laws and regulations" and provided a list of

companies that are required to create audited financial statements. Hangzhou Evernew's Letter,

"Response to the Section III Supplemental Questionnaire," dated May 31, 2024, at 5 and Exhibit

S-9 (Hangzhou Evernew's First SQR), Appx1683, APPX1763. Hangzhou Evernew further

explained that because it did not meet those conditions, it was not required to "formulate an audited financial report in China." *Id.* at 5.

Following Hangzhou Evernew's First SQR, the petitioner, now defendant-intervenor, List Industries, Inc. (List), submitted comments, arguing that "publicly available information . . . confirms that 'a full annual audit is also required of *every company registered in China*.'" List's Letter, "Petitioner's Comments on Hangzhou Evernew Machinery & Equipment Co., Ltd.'s Supplemental Questionnaire Response," dated June 10, 2024, at 3, citing Attachment 1 ("Tax & Accounting Solutions in China," FDI China available at: https://fdichina.com/services/tax-and-accounting-china/) (P.R. 4576381-01).  Specifically, List contended that Article 164 of the Company Law of the People's Republic of China demonstrated that Hangzhou Evernew was required to prepare audited financial statements. *Id.* at 3 (citing List's Letter, "Petitioner's Comments on Xingyi Metalworking Technology (Zhejiang) Co., Ltd.'s Affiliation Response," dated March 18, 2024, at Attachment 1 (List's Comments on XMT's Affiliation Response) (P.R. 4527882-01)), which added the Company law of the People's Republic of China to the record in its entirety).  Article 164 of the Company Law provided that "Companies shall prepare financial and accounting reports at the end of each fiscal year.  Such reports shall be audited by an accounting firm according to the law."  List's Comments on XMT's Affiliation Response at Attachment 1, art. 164 (P.R. 4527882-01).

Accordingly, Commerce issued Hangzhou Evernew another questionnaire instructing Hangzhou Evernew to explain the discrepancy between its answers and the publicly available information on the record that indicates that all companies are required to prepare audited financial statement and to provide unaudited financial reports if it did not have audited financial reports.  *See* Commerce's Letter, "Export Buyer's Credit Program and Third Supplemental

5

Questionnaire," dated July 8, 2024, at 6 (Third Supplemental Questionnaire), APPX1985. Hangzhou Evernew again responded that Article 164 of the Company Law does not "mean that all companies' financial reports need to be audited. Rather, it means that a company should only formulate a financial report audited by an accounting firm ***if it meets specific conditions provided by laws and regulations***." Hangzhou Evernew's Letter, "Hangzhou Evernew's Response to EBCP and Third Supplemental Questionnaire," dated July 30, 2024, at 6, and Exhibit S3-3 (Hangzhou Evernew's Third SQR) (emphasis in original), APPX1998. It noted that "Exhibit S3-3 provides a list of companies required to prepare an audited financial report in China." *Id.* It further explained that the typical companies that are required to keep audited financial statements are "public companies, foreign-funded enterprises, and companies engaged in special industries such as finance, securities, and futures" and that it did not have unaudited financial statements because "there is no legal requirement for {Hangzhou} Evernew to have such reports." *Id.* at 6, APPX1998. Accompanying the Securities Law of the People's Republic of China was what appeared to be a circular that purportedly lists "documents enterprises are required to submit in their annual filings," IDM at 22, APPX2450, but that circular was issued in 2013, well before the period of review for the contested administrative review. *See* Hangzhou Evernew's Third SQR at Exhibit S3-3, APPX2030.

Seeking clarification, Commerce issued a fifth supplemental questionnaire to Hangzhou Evernew requesting that Hangzhou Evernew (1) "{l}ist the documents that {it was} required to submit for {its} 2022 annual corporate registration filings," identifying to whom the documents were submitted and under what laws or regulations they were required; (2) "{l}ist the documents that {it was} required to submit for {its} 2022 tax returns," identifying to whom the documents were submitted and under what laws or regulations they were required; and (3)

6

explain its understanding of the "[███████████████████████████████████

████████████████████████████████]" because Hangzhou

Evernew's tax return indicated it was subject to the "'200 accounting standards for small

businesses' and '108 Adopt General Enterprise Financial Statement Format (2019 Edition)"

which [███████████████████████████████]".  Commerce's

Letter, "Fifth Supplemental Questionnaire," dated August 15, 2024, at 4-5 (citing List's Letter,

"Petitioner's Comments on Hangzhou Evernew Machinery & Equipment Co., Ltd.'s Third

Supplemental Questionnaire Response," dated August 7, 2024, at 6-8) (Fifth Supplemental

Questionnaire), APPX2110-2111.

Hangzhou responded that the "200 Accounting Standards for Small Business . . . is

binding on Hangzhou Evernew, such regulation only governs external reporting by Hangzhou

Evernew, but not applies {sic} to Hangzhou Evernew's daily internal accounting management."

Hangzhou Evernew's Letter, "Response to the Initial Questionnaire Response Fifth

Supplemental Questionnaire," dated August 21, 2024, at 5, APPX 2122.  Instead, under the 200

Accounting Standards, Hangzhou Evernew is only required to keep "notes to the financial

statements . . . when {it} conducts commercial activities involving public participation."  *Id.* at 5,

APPX 2122.  Hangzhou Evernew also indicated that the "108 Adopt General Enterprise

Financial Statement Format (2019 Edition) was not applicable to Hangzhou Evernew as

indicated" in its tax return, in which there is a "no" after "General Enterprise Financial Statement

Format (2019 Edition)."  *Id.* at 4, APPX2121.

**VIII.    In The *Preliminary Results*, Commerce Preliminarily Relies on Hangzhou Evernew's Balance Sheet And Income Statements And Issues A Sixth Supplemental Questionnaire**

7

In September 2024, Commerce published the *Preliminary Results*, calculating a company-specific subsidy rate of 15.35 percent for Hangzhou Evernew.  *See Certain Metal Lockers and Parts Thereof From the People's Republic of China: Preliminary Results and Intent To Rescind, in Part, of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 74,204, 74,205 (Dep't of Commerce Sept. 12, 2024) (*Preliminary Results*), APPX2381-2382, and accompanying Preliminary Decision Memorandum (PDM), APPX2336-2380.  In doing so, Commerce preliminarily relied on Hangzhou Evernew's financial documents as reported.  *See* Mem. "Preliminary Calculation Memorandum for Hangzhou Evernew Machinery & Equipment Company Limited," dated September 6, 2024, at 3, P.R. 4630100-01 ("We preliminarily calculate the following *ad valorem* subsidy rate for Hangzhou Evernew based on information placed on the record of this review.").

## IX.    Parties Submit Case and Rebuttal Briefs in Advance of the *Final Results*

In its case brief, the petitioner argued that Commerce should apply total AFA (adverse facts available) to Hangzhou Evernew for its failure to provide audited financial statements or notes for unaudited financial statements, such notes being included in the format of financial statements required by the applicable "Accounting Standards for Small Business," as requested by Commerce.  List's Letter, "Case Brief," dated December 4, 2024, at 4-11, APPX2396-2403. Hangzhou Evernew responded that necessary information was not missing from the record because Commerce has previously accepted "unaudited financial statements without notes" and "Hangzhou Evernew ha{d} already provided the financial statements" and other information that would enable Commerce to calculate a subsidy rate for Hangzhou Evernew.  Hangzhou Evernew's Letter, "Rebuttal Case Brief," dated December 12, 2024, at 2-3, APPX2421-2422. Hangzhou Evernew also argued that (1) it could not withhold information it does not have, (2) it

had "cooperated fully with Commerce's requirements for all the information and submitted all required Questionnaire responses on-time," (3) its submitted financial statements were sufficient for Commerce to make a preliminary determination, and (4) its financial statements could be verified by reference to its tax returns. *Id.* at 3-5, APPX2422-2424. Accordingly, Hangzhou Evernew contended that application of total AFA was inappropriate. *Id.* at 4, APPX2423.

## X.    Commerce Publishes the *Final Results* and Applies Total AFA to Hangzhou Evernew

In June 2025, Commerce published the *Final Results*. In the *Final Results*, Commerce reconsidered its reliance on Hangzhou Evernew's financial report and determined that application of total AFA to Hangzhou Evernew was appropriate. *See Final Results*, 90 Fed. Reg. at 25,024, APPX2463. This determination was made because "Hangzhou Evernew did not provide . . . audited financial statements or reliable financial statements with notes." IDM at 9, APPX2437. Consequently, Commerce could not "rely on Hangzhou Evernew's sales denominators, affiliation, and self-reported usage of programs." *Id.* Following its CVD AFA Hierarchy, Commerce calculated an *ad valorem* subsidy rate of 220.95 percent for Hangzhou Evernew. *Final Results*, 90 Fed. Reg. at 25,025, APPX2464.

Based on the information in the record, Commerce found that Hangzhou Evernew "was required to prepare financial statements for tax filing with the GOC{(Government of China)}, and therefore, Hangzhou Evernew should have financial statements prepared for its normal course of business in China." IDM at 22, APPX2450. Underscoring this point, Commerce observed that Hangzhou Evernew's affiliate, which also did not meet the criteria that purportedly would require a company in China to prepare audited (or unaudited) financial statements, provided audited financial reports with notes. *Id.* at 23, APPX2451. Additionally, as the proceeding developed, Commerce found that "record information regarding accounting standards

9

in comparison to the tax returns submitted reflect{ed} inconsistencies with Hangzhou's explanations in its questionnaire responses and arguments made in its case briefs" for why it was unable to produce audited financial statements or, alternatively, unaudited financial statements with notes." *Id.*

## SUMMARY OF THE ARGUMENT

Commerce's application of FA (facts available) was warranted because Hangzhou Evernew failed to provide either audited financial statements or unaudited financial statements with notes as requested by Commerce and as Hangzhou Evernew was required to keep under Chinese law and general accounting principles. Hangzhou Evernew contends that it did not meet certain conditions under Chinese law that would require it to keep such financial statements and thus it could not be faulted for not providing information it does not have. However, Hangzhou Evernew's responses to Commerce's Initial Questionnaire and subsequent supplemental questionnaires were inconsistent and did not provide a clear answer as to whether it should have kept audited financial statements or unaudited financial statements, especially in light of the fact that Hangzhou Evernew's similarly situated affiliates did submit audited financial statements with notes.

Hangzhou Evernew's decision not to provide audited financial statements or unaudited financial statements with notes prevented Commerce from relying on Hangzhou Evernew's sales denominators, affiliation reporting, and self-reported usage of programs. In other words, Hangzhou Evernew's failure to provide complete financial statements requested by Commerce, despite being required to keep them under Chinese law and accounting principles, called into question whether there was other information Hangzhou Evernew was withholding. Thus, Commerce was unable to accurately assess the full extent of subsidies Hangzhou Evernew

10

received from the GOC.  Accordingly, Commerce properly determined that there was necessary information missing from the record, that Hangzhou Evernew withheld information, that Hangzhou Evernew failed to provide information timely, and in the form and manner requested, and that Hangzhou Evernew significantly impeded the investigation.  Commerce stressed the audited financial statements or unaudited financial statements were critical to determining whether and what subsidies are received as shown by the Initial Questionnaire and three subsequent supplemental questionnaires.

Commerce's application of AFA was also warranted because despite being required to have prepared audited financial statements, Hangzhou Evernew did not prepare such statements or at least did not submit them to Commerce.  Indeed, rather than provide straightforward answers, Hangzhou Evernew provided inconsistent explanations for why it did not have to or did not provide the requested financial statements to Commerce.

## **ARGUMENT**

### IV.    **Standard of Review**

The Court upholds Commerce determinations that are supported "by substantial evidence on the record" and otherwise "in accordance with law{.}"  19 U.S.C. § 1516a(b)(1)(B)(i).  Commerce's factual findings "are conclusive unless unsupported by substantial evidence." *United States v. Eurodif S.A.*, 555 U.S. 305, 316 & n.6 (2009) (citation omitted).  "Substantial evidence" connotes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009).  Even if the Court may draw two inconsistent conclusions from the evidence contained in the record, doing so "does not prevent an administrative agency's finding from being supported by substantial

evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citation omitted).  An

agency decision may not be overturned "simply because the reviewing court would have reached

a different conclusion based on the same record." *Cleo Inc. v. United States*, 501 F.3d 1291,

1296 (Fed. Cir. 2007) (citations omitted).

**V.      Commerce Properly Applied Facts Available to Hangzhou Evernew in Calculating
Hangzhou Evernew's Subsidy Rate**

**C.      Legal Standard**

Respondents in Commerce's proceedings have the burden of producing evidence as the

"party in possession of necessary information." *Zenith Electronics Corp. v. United States*, 988

F.2d 1573, 1583 (Fed. Cir. 1993).  Commerce, however, "lacks subpoena power to ensure

compliance" with its request for information and must rely on a party's certification that its

reporting is accurate and responsive to Commerce's requests.  *AG Der Dillinger Huttenwerke v.

United States*, 140 F.4th 1364, 1371 (Fed. Cir. 2025) (internal quotations omitted); *see* 19 C.F.R.

§ 351.303(g).  As a substitute, the statute permits Commerce to "supply facts not in the

administrative record to complete its" administrative review.  *See Dalian Meisen Woodworking

Co., Ltd. v. United States*, 571 F. Supp. 3d 1364, 1370 (Ct. Int'l Trade 2021).  If "necessary

information is not available on the record," 19 U.S.C. § 1677e(a)(1), "or" if a party (1) withholds

requested information, (2) fails to provide information by established deadlines or in the form or

manner requested, (3) significantly impedes the review, or (4) provides information that cannot

be verified, *id.* § 1677e(a)(1), Commerce shall "use the facts otherwise available."  *Id.*

§ 1677e(a)(2).  "Because the use of 'facts otherwise available' is a means for filling in gaps in

the record, Commerce sometimes refers to using 'total' or 'partial' facts otherwise available."

*See Dalian Meisen*, 571 F. Supp. 3d at 1370 (internal citation omitted).  When none of the

12

reported data is "reliable or usable," Commerce applies total facts available.  *See Mukan Ltd. v. United States*, 767 F.3d 1300, 1305 (Fed. Cir. 2014).

However, Commerce's use of facts otherwise available is limited by 19 U.S.C. § 1677m. Commerce shall not decline to use information if the information is timely submitted, the information can be verified, the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination, the party acted to the best of its ability, and the information can be used without undue difficulties.  19 U.S.C. § 1677m(e); *see Jindal Poly Films v. United States*, 365 F. Supp. 3d 1379, 1386 (Ct. Int'l Trade 2019).  In addition, Commerce is required "to provide a respondent with notice of deficient responses, and an opportunity to remediate, before deciding to rely on facts available."  *BlueScope Steel Ltd. v. United States*, 548 F. Supp. 3d 1351, 1359 (Ct. Int'l Trade 2021) (citing 19 U.S.C. § 1677m(d)).

**D.      Hangzhou Evernew's Failure to Provide Audited Financial Statements Or Unaudited Financial Statements With Notes Warranted The Use of Total Facts Available**

Commerce correctly determined that the use of facts otherwise available was appropriate consistent with 19 U.S.C. § 1677e(a).  Commerce's purpose for requesting audited financial statements or unaudited financial statements with notes is to ensure that a respondent is correctly reporting its sales denominators, its affiliation, and its usage of and benefits received from countervailable subsidy programs.  IDM at 23, APPX2451.  This information is critical "because reliable financial statements are essential to Commerce's ability to determine the accuracy and completeness of a respondent's {} questionnaire responses, *e.g.* cross-ownership submissions and reported non-use of programs."  Indeed, Commerce requested this information from Hangzhou Evernew **four times**.  *See* IDM at 19-21, APPX2447-2449 (summarizing Commerce's

13

requests and Hangzhou Evernew's responses in the Initial Questionnaire and three supplemental questionnaires).

In its Initial Questionnaire Response, Hangzhou Evernew provided what it characterized to be financial statements for 2020, 2021, and 2022.  Hangzhou Evernew's Initial Questionnaire Response at 7, Exhibit 3-E, APPX1166.  Commerce, however, observed that Hangzhou had not provided financial statements but rather only "balance sheets and income statements . . . not full financial statements," First Supplemental Questionnaire at 4, Appx1669, despite Commerce's instruction that a full response would include an "income statement, balance sheet, cash flow statement, statement of change in equity, all notes thereto, and {an} auditor's opinion."  Initial Questionnaire at III-6, APPX1102.  Commerce again instructed Hangzhou Evernew "to provide {its} audited financial statements" to which Hangzhou Evernew responded that it was not required to prepare an audited financial statement.  *Compare* First Supplemental Questionnaire at 4, Appx1669, *with* Hangzhou Evernew's First SQR at 5, and Exhibit S-9, APPX1683 (excerpt from the Securities Law of China listing some potential companies required to prepare audited financial statements).

Nevertheless, record information suggested that every company registered in China is required to prepare an annual audited financial statement.  *See* List's Comments on XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (providing the Company Law of China).  Specifically, Article 164 of the Company Law of China provides that "{c}ompanies shall prepare financial and accounting reports at the end of each fiscal year.  Such reports shall be audited by an accounting firm according to law."  *Id.* at Attachment 1, art. 164.  When Commerce inquired about this in its Third Supplemental Questionnaire, Hangzhou again responded that it was not required to prepare audited financial statements and that "there is no

14

legal requirement for {Hangzhou} Evernew to have such reports." Hangzhou Evernew's Third SQR at 6, APPX1998.

In Commerce's Fifth Supplemental Questionnaire to Hangzhou Evernew, Commerce requested Hangzhou Evernew to clarify which accounting standards it adhered to because record information indicated that not only were all companies in China required to prepare audited financial statements, specifically including "the type of company Hangzhou Evernew is registered as for tax filing purposes in China." IDM at 21, APPX2449; *see* Fifth Supplemental Questionnaire at 4-5, APPX2110-2111 (discussing applicable accounting standards based on Hangzhou Evernew's tax filings); *see also* Hangzhou Evernew's Initial Questionnaire Response at Exhibit V-EN-2 APPX1341 ████████████████████████████████████ ]. Hangzhou Evernew finally conceded that the "200 Account Standards for Small Business," which requires companies to prepare audited financial statements, "is binding on Hangzhou Evernew," but Hangzhou Evernew asserted that those accounting standards "only govern{} external reporting by Hangzhou Evernew, {and do} not {apply} to Hangzhou Evernew's daily internal accounting management." Hangzhou Evernew's Fifth SQR at 5, APPX 2122. This answer, however, was inconsistent with Hangzhou's previous answers which simply stated that Hangzhou Evernew did not have a legal requirement to prepare audited financial statements. IDM at 23, APPX2451. *Compare* Hangzhou Evernew's First SQR at 5, APPX1683 ("Hangzhou Evernew . . . doesn't suit these special conditions, and thus is not required to formulate an audited financial report in China."), *with* Hangzhou Evernew's Third SQR at 6, APPX1998 ("{T}here is no legal requirement for {Hangzhou} Evernew to have such reports."), *and* Hangzhou Evernew's Fifth SQR at 5, APPX 2122. This answer also conflicted with the fact that Hangzhou Evernew's affiliate, which also would not have met the criteria to prepare audited

15

financial statements, prepared and submitted audited financial statements to Commerce.  IDM at 23, APPX2451 (citing Hangzhou Evernew's Initial Questionnaire Response at 7, and Exhibit 4-Y (Affiliate's Audited 2022 Financial Statements); Hangzhou Evernew's First SQR at Exhibit S-10).

Thus, after providing Hangzhou Evernew four opportunities to submit audited financial statements or unaudited financial statements with notes, in the *Final Results*, Commerce determined that necessary information within the meaning of 19 U.S.C. § 1677e(a)(1) was missing from the record because Hangzhou did not provide such financial statements.  IDM at 21, APPX2449; *see Essar Steel Ltd. v. United States*, 721 F. Supp. 2d 1285, 1298-99 (Ct. Int'l Trade 2010) (sustaining Commerce's application of AFA where it provided a respondent multiple opportunities to submit requested information).  In failing to provide the requested financial statements, Hangzhou Evernew deprived Commerce of information "essential to Commerce's ability to determine the accuracy and completeness" of Hangzhou Evernew's questionnaire responses such as its "cross-ownership submissions and reported non-use of programs."  *Id.*

In the *Final Results*, Commerce also determined that Hangzhou Evernew had withheld the requested financial statements that it was required to prepare and significantly impeded the proceeding by submitting inconsistent responses and failing to provide clear answers to Commerce's requests.  *Id.* (citing 19 U.S.C. §§ 1677e(a)(2)(A), (C)).  As the record demonstrates, every company in China, including small companies such as Hangzhou Evernew, are required to prepare audited financial statements.  *Compare* List's 's Comments on XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164 of the Company Law of China), *with* Hangzhou Evernew's Fifth SQR at 5, APPX 2122 (discussing binding accounting

16

principles that require preparation of audited financial statements), *and* Hangzhou Evernew's

Initial Questionnaire Response at Exhibit 4-Y, APPX1446 (audited financial reports of similarly

situated affiliate).  Accordingly, Commerce correctly applied total facts available to Hangzhou

Evernew.

Nevertheless, Hangzhou Evernew argues that Commerce's determination to apply facts

available is flawed because Commerce's request for audited financial statements is a preference,

and Commerce has previously accepted unaudited financial statements.  Hangzhou Evernew's

Br. at 14-16 (citing *Solvay Solexis S.p.A. v. United States*, 637 F. Supp. 2d 1306, 1309 (Ct. Int'l

Trade 2009)) (*Solvay Solexis*).  Further, Hangzhou Evernew argues that Commerce has declined

to apply facts available where it could reconcile respondent's unaudited financial documents

with other information on the record.  *Id.* at 17 (citing *Certain Cold-Rolled Carbon Steel Flat

Products from The Netherlands*, 67 Fed. Reg. 62,112 (Dep't of Commerce Oct. 3, 2002), and

accompanying IDM at 8).

1.  **Hangzhou Evernew's Audited Financial Statements Were Necessary Information And Hangzhou Evernew Deprived Commerce of The Opportunity to Determine The Accuracy And Completeness of Hangzhou Evernew's Questionnaire Responses**

Commerce correctly determined that Hangzhou Evernew's audited financial statements

were necessary information in calculating Hangzhou Evernew's subsidy rate because "reliable

financial statements are essential to Commerce's ability to determine the accuracy and

completeness of", among other things, Hangzhou Evernew's cross-ownership submissions and

reported use or non-use of programs.  IDM at 21, APPX2449.

Hangzhou Evernew contends that Commerce's request for audited financial statements is

merely a preference and that neither the statute nor Commerce's regulations "require respondents

to provide Commerce either only audited financial statements or 'reliable financial statements

17

with notes.'"  Hangzhou Evernew Br. at 14-15 (citing *Solvay Solexis S.p.A. v. United States*, 637 F. Supp. 2d 1306, 1309 (Ct. Int'l Trade 2009); 19 U.S.C. §1677b(f)(1)(A); 19 C.F.R. § 351.402(d)(2)).  However, Commerce, not Hangzhou Evernew, determines what information is necessary to make its determination.  *See Bebitz Flanges Works Pvt. Ltd. v. United States*, 433 F. Supp. 3d 1297, 1305 (Ct. Int'l Trade 2020).  The purpose of requiring audited financial statements or unaudited financial statements with notes is to confirm the accuracy and completeness of a respondent's reporting.  *See* IDM at 9, 23, APPX2437, APPX2451; Initial Questionnaire at III-6, APPX1102.  Thus, while Commerce may at times accept something less than audited financial statements, here Hangzhou Evernew was required under Chinese law and binding accounting standards to have audited financial statements and could have satisfied Commerce's request but did not.

Hangzhou Evernew points to other countervailing duty proceedings wherein Commerce accepted unaudited financial statements for the proposition that "Commerce's {sic} established the baseline rule that the absence of audited financial statements is not fatal when reasonably explained and supplemented by other reliable evidence."  Hangzhou Evernew Br. at 15-16 (citing *Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative*; 2021, 88 Fed. Reg. 16 75,267 (Dep't of Commerce Nov. 2, 2023) (*Aluminum Foil from China 2021 Review*), and accompanying IDM at 12-15; *Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative*; 2022, 89 Fed. Reg. 88,957 (Dep't of Commerce Nov. 12, 2024) (*Aluminum Foil from China 2022 Review*), and accompanying IDM at 17-18).

Commerce is not bound by its prior determinations.  *See Al Ghurair Iron & Steel LLC v. United States*, 65 F.4th 1351, 1360 (Fed. Cir. 2023) (citing *Hyundai Elec. & Energy Sys. Co. v.*

18

*United States*, 15 F.4th 1078, 1089 (Fed. Cir. 2021) ("We have rejected the notion that Commerce is forever bound by its past practices."). Instead "each administrative review is a separate exercise of Commerce's authority that allows for *different conclusions* based on *different facts* in the record." *Qingdao Sea-Line Trading Co., Ltd. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014).

> a. The Aluminum Foil from China determinations support Commerce's decision to apply facts available to Hangzhou Evernew

Hangzhou's reliance on the *Aluminum Foil from China* determinations is flawed because the *Aluminum Foil from China* determinations support Commerce's decision to apply facts available to Hangzhou Evernew. In those determinations, Commerce assessed whether respondents had benefited the Export Buyer's Credit program. *See Aluminum Foil from China 2021 Review* IDM at Comment 1; *Aluminum Foil from China 2022 Review* IDM at Comment 1. Commerce's practice under the Export Buyer's Credit program requires that respondents provide non-use certifications from all of their U.S. customers for this program. In both cases, certain respondents were able to provide the requested non-use certifications from all of their U.S. customers, and their U.S. customers were fully responsive to Commerce's subsequent requests for information and, if necessary, verification. *See Aluminum Foil from China 2021 Review* IDM at 13-14; *Aluminum Foil from China 2022 Review* IDM at 16-17.

Importantly, the factual situations between *Aluminum Foil from China* and the instant case are very different. In *Aluminum Foil from China*, Commerce was considering the information of a U.S. customer of a respondent rather than information from the Chinese respondent itself. One of the mandatory respondents submitted the U.S. customer's unaudited financial statements but explained that that particular customer's "financial information is consolidated with its parent company's information, and that the parent company's information

19

is audited on a consolidated basis." *Aluminum Foil from China 2021 Review* IDM at 15.  Thus, Commerce accepted the unaudited financial statements from the U.S. customer on that basis, and because the respondent had provided other evidence that the customer did not have any loans during the period of review.  *See id.*  In the subsequent review, Commerce preliminarily determined that the same customer had used the Export Buyer's Credit program because of its failure to provide audited financial statements.  *Aluminum Foil from China 2022 Review* IDM at 17.  However, Commerce changed its position when it realized that the customer in question was the same customer from the 2021 review.  Commerce accepted its unaudited financial statements on that basis.  *Id.* at 17-18.

Thus, taken together, the *Aluminum Foil from China* determinations only permitted the use of unaudited financial statements because a parent company's financial statements were audited (and the company in question consolidated its financial statements with that parent).  *See Giorgio Foods, Inc. v. United States*, 2024 WL 3534491, at *4-5 (Ct. Int'l Trade 2024) ("Commerce refused to criticize the company for not providing internal financial statements, reasoning that they were not created using generally accepted accounting principles and in any event were consistent with the parent's statements.").  Were that not the case, Commerce would have found the submission of an "income statement and balance sheet" to be insufficient for purposes of determining usage of a program.  *Aluminum Foil from China 2022 Review* IDM at 17.  Further, the *Aluminum Foil from China* determinations at most speak to treatment of information supplied by third-party U.S. customers, rather than requirements placed on reporting by the actual respondent's themselves in Commerce's proceedings.

Here, however, Hangzhou Evernew failed to provide audited financial statements that it was required to prepare under Chinese law and accounting standards.  *See* List's Comments on

20

XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164); List's Comments on Hangzhou Evernew's First SQR at 3, Attachment 1, (P.R. 4576381-01); Hangzhou Evernew's Fifth SQR at 5, APPX 2122.  Instead, Hangzhou Evernew only provided "balance sheets and income statements for the last three years, not full financial statements."  Hangzhou Evernew's Initial Questionnaire Response at 7, and Exhibit 3-E, APPX1166.  Unlike the entities at issue in the *Aluminum Foil from China* determinations, however, Hangzhou Evernew did not sufficiently explain why it was only providing unaudited financial statements when Chinese law and binding accounting standards seemingly required it to prepare audited financial statements.  Instead, as discussed above, Hangzhou Evernew provided inconsistent statements, especially in light of the fact that its similarly situated affiliate did provide audited financial statements.  *See* Hangzhou Evernew's Initial Questionnaire Response at 7, and Exhibit 4-Y, APPX1186 (Affiliate's Audited 2022 Financial Statements); Hangzhou Evernew's First SQR at Exhibit S-10, APPX1691.

> b.  *Solvay Solexis* does not undermine Commerce's decision to apply facts available to Hangzhou Evernew

Hangzhou Evernew's reliance on *Solvay Solexis* is also misplaced.  In *Solvay Solexis*, this Court assessed whether Commerce permissibly utilized unaudited financial statements that were compliant with Italian generally accepted accounting principles (GAAP) to adjust the plaintiff's general and administrative (G&A) expense ratio, when the plaintiff had also provided audited financial statements.  637 F. Supp. 2d at 1181-83.  The difference between the two sets of financial statements was that the unaudited GAAP-compliant financial statements contained a line item for "depreciated goodwill," *id.* at 1179, while the audited financial statements did not.  *Id.*  As this Court explained, the "depreciated goodwill" was an "expense to Solvay Solexis, which can be legitimately attributed to its G&A expenses."  *Id.* at 1182-83.  Thus, this Court held that Commerce was permitted to utilize the unaudited GAAP compliant financial statements,

21

reasoning that "Commerce's ultimate purpose is to acquire the most complete and accurate financial picture of the company."  *Id.* at 1182.

*Solvay Solexis* is distinguishable from the instant case.  First, this Court's primary concern in *Solvay Solexis* was not whether the financial statements were audited or not, as Hangzhou seems to contend, but rather whether the financial statements used by Commerce were "the most complete and accurate financial picture of the company."  *Id.* at 1182; *see* Hangzhou Evernew's Br. at 14-15 (emphasizing the Court's acceptance of unaudited financial statements).  Thus, its only relevance, if any, is for the general proposition that Commerce seeks "the most complete and accurate financial picture of {a} company."  637 F. Supp. 2d at 1182.  Far from providing a "complete and accurate financial picture" of itself, Hangzhou Evernew provided only "balance sheets and income statements."  *See* Hangzhou Evernew's Initial Questionnaire Response at 7, and Exhibit 3-E, APPX1166; *cf.* First Supplemental Questionnaire at 4, Appx1669.

Second, *Solvay Solexis* relates to an antidumping proceeding, not a countervailing duty proceeding.  Hangzhou Evernew's cursory acknowledgement of this fact does little to support its citation to *Solvay Solexis*.  *See* Hangzhou Evernew's Br. at 15 ("Although CVD proceedings differ from AD proceedings, the same general statutory provisions regulate the imposition of countervailing duties and reviews.").  As Commerce explained in the *Final Results*, "reliance on Commerce's determinations in an antidumping proceeding is not necessarily germane to a {countervailing duty} proceeding because antidumping and {countervailing duty} proceedings have differing considerations."  IDM at 21, APPX2449.

In an antidumping proceeding, Commerce "makes a fair comparison between the export price, or constructed export price, and normal value," and may disregard "sales made in the

22

home country for less than the cost of production." *Solvay Solexis*, 637 F. Supp. 2d at 1181. In the context of antidumping proceedings, financial statements are relevant because "{t}he cost of production is normally calculated 'based on the records of the exporter or producer of the merchandise.'" *Id.* In a countervailing duty proceeding, Commerce is concerned with "the unfair competitive advantage that foreign producers would otherwise enjoy from export subsidies paid by their governments." *Kiswok Indus. Pvt. Ltd. v. United States*, 28 CIT 774, 780 (2004). To accurately determine the level of subsidies received by respondents, Commerce requests audited financial statements or unaudited financial statements for the purpose of assessing the "accuracy and completeness" of a respondent's cross-ownership submissions and reported use or non-use of programs. IDM at 21, APPX2449; *see Uttam Galva Steels Limited v. United States*, 476 F. Supp. 3d 1387, 1392-93 (Ct. Int'l Trade 2020) ("Commerce reasonably explained whit it found that the {} financial statement did not conclusively provide a full account of {party's} geographic presence and sectoral activities.").

Nor do the "same general statutory provisions regulate the imposition of countervailing duties and reviews" as advanced by Hangzhou Evernew. Hangzhou Br. at 15. Confusingly, Hangzhou Evernew cites the "normal value" provision of the statute. *Id.* (citing 19 U.S.C. § 1677b(a)). But Commerce imposes countervailing duties "when the government of a country or any public entity with the territory is providing, directly or indirectly, a countervailable subsidy." 19 U.S.C. § 1671(a). Indeed, Commerce does not calculate "normal value" in countervailing duty proceedings because that concept is not relevant to determining whether a countervailable subsidy has been provided. *See* 19 U.S.C. § 1677(5) (defining "countervailable subsidy"). Hangzhou Evernew's citation to 19 C.F.R. § 351.402(d)(2) is similarly confusing. 19 C.F.R. § 351.402(d)(2), concerns the "use of financial reports" "{f}or purposes of determining

23

profit" when Commerce uses a constructed export price for comparison to normal value. *See* 19 U.S.C. § 1677a(d)(2). Commerce does not use a "constructed export price" in countervailing duty proceedings. Accordingly, *Solvay Solexis* is distinguishable and Hangzhou Evernew's reliance on that case is misplaced.

c. The *Cold-Rolled Steel from the Netherlands* determination does not undermine Commerce's decision to apply facts available to Hangzhou Evernew

For similar reasons, Hangzhou Evernew's reference to yet another antidumping proceeding is also inapposite. *See* Hangzhou Evernew's Br. at 17 (citing *Certain Cold-Rolled Carbon Steel Flat Products from The Netherlands*, 67 Fed. Reg. 62,112 (Dep't of Commerce Oct. 3, 2002) (*Cold Rolled Steel from the Netherlands*), and accompanying IDM at 8). Hangzhou Evernew cites *Cold-Rolled Steel from the Netherlands*, for the proposition that "unaudited financial statements do not challenge the credibility of all data nor warrant an AFA rate." Hangzhou Br. at 17. In that case, however, the unaudited financial statements were used to reconcile the respondent's quantity and value information. *Cold Rolled Steel from the Netherlands* IDM at 9. But even if the numbers in Hangzhou Evernew's financial documents could be "verified" by reference to its tax returns, *see* Hangzhou Br. at 17, 20, that would only confirm the numbers with respect to Hangzhou Evernew, but not any companies or programs it failed to report. That was precisely Commerce's point when it found that Hangzhou Evernew had "deprive{d} Commerce of necessary information" by failing to provide audited financial statements. IDM at 21, APPX2449.

Indeed, the facts of this record indicate that Hangzhou Evernew was required to prepare audited financial statements because Chinese companies are generally required to under article 164 of the Company Law of China or because Hangzhou Evernew was specifically required to pursuant to the "200 Accounting Standards for Small Business." *See* List's Comments on

24

XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164); Petitioner's Comments on Hangzhou Evernew's First SQR at 3, (P.R. 4576381-01), Attachment 1; Hangzhou Evernew's Fifth SQR at 5, APPX 2122.  Hangzhou Evernew, however, neither prepared nor provided audited financial statements as required by Chinese law and binding accounting standards and as requested by Commerce.  Thus, what it did submit is unreliable.  Nor did Hangzhou Evernew rebut these requirements with actual evidence or its own documents as requested by Commerce.  *See* Fifth Supplemental Questionnaire at 5, APPX2111 ("Please provide supporting documentation specific to Hangzhou Evernew.").  Rather, Hangzhou Evernew simply replied that "like most other Chinese enterprises," it "does not maintain financial statements with notes in daily accounting management because there are no disclosure requi{r}ements for them" and pointed to situations in which other Chinese respondents had provided unaudited financial statements without notes.  *See* Hangzhou Evernew's Fifth SQR at 5-6, APPX 2122-2123.  As Commerce explained in the *Final Results* "this explanation does not reference actual accounting standards, or any law or regulation excusing companies from following them."  IDM at 21, APPX2449.  Accordingly, Commerce properly used total facts available to calculate Hangzhou Evernew's subsidy rate.

### 2. Hangzhou Evernew Withheld The Financial Statements Requested And Significantly Impeded The Proceeding

Commerce also correctly found that Hangzhou Evernew withheld requested information and significantly impeded the proceeding within the meaning of 19 U.S.C. 1677e(a)(2)(A) and (C).  As discussed above, the record demonstrates that Hangzhou Evernew was required to keep audited financial statements in accordance with Chinese law and accounting standards.  *See* List's Comments on XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164); Petitioner's Comments on Hangzhou Evernew's First SQR at 3, (P.R. 4576381-01), Attachment

25

1; Hangzhou Evernew's Fifth SQR at 5, APPX 2122.  Specifically, Commerce requested in its Fifth Supplemental Questionnaire, that Hangzhou Evernew explain why the accounting standards it was subject to did not require audited financial statements, and to "provide supporting documentation specific to Hangzhou Evernew."  Fifth Supplemental Questionnaire at 5, APPX2111.  In its response, Hangzhou Evernew did not provide that information, and instead simply restated that there was no legal requirement for it to keep audited financial statements and that most Chinese respondents do not keep audited financial statements.  Hangzhou Evernew's Fifth SQR at 4-6, APPX 2121-2123.  Yet, its own affiliate provided audited financial statements. *See* Hangzhou Evernew's Initial Questionnaire Response at 7, and Exhibit 4-Y, APPX1186 (Affiliate's Audited 2022 Financial Statements).  Thus, that Hangzhou Evernew did not keep audited financial statements and submitted what it had, balance sheets and income statements, is irrelevant when Hangzhou Evernew was actually required to keep audited financial statements. Accordingly, Commerce properly found that Hangzhou Evernew had withheld necessary information.

Similarly, Commerce also properly found that Hangzhou Evernew significantly impeded the proceeding.  It was not until Commerce's Fifth Supplemental Questionnaire, that Hangzhou Evernew finally conceded that binding accounting standards required companies such as itself to prepare audited financial statements.  Hangzhou Evernew's Fifth SQR at 5, APPX 2122.  This concession is inconsistent with Hangzhou's other reporting stating that there was no legal requirement for Hangzhou to prepare audited financial statements.  *Compare* Hangzhou Evernew's First SQR at 5, APPX1683 (asserting it was not required to formulate audited financial statements because it did not meet special conditions), *and* Hangzhou Evernew's Third

26

SQR at 6, APPX1998 ("There is no legal requirement for {Hangzhou} Evernew to have such reports."), *with* Hangzhou Evernew's Fifth SQR at 5, APPX 2122.

Hangzhou Evernew contends that it never impeded the proceeding and answered all questionnaires issued by Commerce. Hangzhou Br. at 12, 21-22. Or alternatively, that Commerce could have reconciled Hangzhou Evernew's balance sheets and income statements with its tax returns. *Id.* at 22-23. Hangzhou Evernew misses Commerce's point. Because Hangzhou Evernew's answers to the questionnaires were inconsistent and Hangzhou Evernew did not provide clear answers, it significantly impeded the administrative review. *See* IDM at 23, APPX2451. Nor would Commerce's use of Hangzhou Evernew's tax return to reconcile the balance sheets and income statements absolve Hangzhou Evernew because Commerce's concern was not just Hangzhou Evernew's sales denominator, but also affiliation and program usage reporting. *Id*.

### 3. Commerce's Request for Audited Financial Statements Or Unaudited Financial Statements With Notes Was Not Arbitrary Or Capricious

Hangzhou Evernew argues that Commerce is applying a "high hurdle" to it in applying AFA for its failure to provide audited financial statements or unaudited financial statements with notes. Hangzhou Evernew Br. at 19. It contends that Commerce's treatment of Hangzhou Xline Machinery & Equipment Co., Ltd. in the *antidumping* investigation of the companion antidumping duty order demonstrates that it acted to the best of its ability and "consistently maintained to {Commerce} that it provided" the requested financial statements. *Id.* at 19-20.

"An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently." *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001). Commerce addressed Hangzhou Evernew's reliance on the antidumping duty determination for the proposition that Commerce should accept Hangzhou Evernew's balance

27

sheets and income statements.  IDM at 21, APPX2449.  Specifically, Commerce explained that not only is Commerce not bound by its past practice, but that "Hangzhou Evernew's reliance on Commerce's determinations in an antidumping proceeding is not necessarily germane to a CVD proceeding because antidumping and CVD proceedings have differing considerations."  IDM at 21, APPX2449.  In other words, "the situations were different."  *POSCO v. United States*, 353 F. Supp. 3d 1357, 1377 (Ct. Int'l Trade 2018).

Here, Commerce is calculating Hangzhou Evernew's countervailable subsidy rate, not its weighted-average dumping margin.  *See Final Results*, 90 Fed. Reg. at 25,024-25.  As explained above, the relevance of financial statements is different in antidumping and countervailing duty proceedings.  Here, Commerce was concerned with its "ability to determine the accuracy and completeness of" Hangzhou Evernew's "cross-ownership submissions and reported non-use of programs."  IDM at 21, APPX2449.  In antidumping proceedings, Commerce's concern with financial statements is to calculate the cost of production.  *See Solvay Solexis*, 637 F. Supp. 2d at 1181.

Hangzhou Evernew's response is that its "unaudited financial statements without notes also could have been used to determine the accuracy and completeness of Evernew's QRs for cross-ownership submissions and/or reported non-use of programs," but it does not provide an explanation as to how.  Hangzhou Evernew's Br. at 23.  Rather it contends that Commerce could have reconciled its sales information by comparison with its tax returns, similar to Commerce's action in *Certain Frozen Warmwater Shrimp from China*.  *Id.* at 22.  However, that "solution" does not actually address the concern identified by Commerce—that Commerce was unable to determine the accuracy and completeness of Hangzhou Evernew's questionnaire responses, including those related to its cross-ownership submissions and reported non-use of programs,

28

where it was required to keep audited financial statements but did not. IDM at 21, APPX2449. The logical inference is that where Hangzhou Evernew withheld audited financial statements that it was required to prepare under Chinese law, it could have withheld other information pertaining to cross-ownership and program usage.

Thus, far from "never offer{ing} a reason for treating similar situations differently," Hangzhou Evernew's Br. at 23, Commerce explained in detail why the specific facts of a case would cause it to come to differing conclusions. In short, not only is Hangzhou Evernew gravely misunderstanding the basic differences between antidumping and countervailing duty proceedings, but it also fails to understand that on the record of this review, information suggested that Hangzhou Evernew is required to prepare audited financial statements. *See* List's Comments on XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164); List's Comments on Hangzhou Evernew's First SQR at 3, (P.R. 4576381-01), Attachment 1; Hangzhou Evernew's Fifth SQR at 5, APPX 2122. Further, bolstering Commerce's position is the fact that Hangzhou Evernew's similarly situated affiliate *had prepared audited financial statements*. *See* IDM at 23, APPX2451 (citing Hangzhou Evernew's Initial Questionnaire Response at 7, and Exhibit 4-Y (Affiliate's Audited 2022 Financial Statements); Hangzhou Evernew's First SQR at Exhibit S-10).

Accordingly, Commerce's *Final Results* are neither arbitrary nor capricious, and this Court should sustain the *Final Results*.

## VI. Commerce Properly Applied AFA to Hangzhou Evernew in Calculating Hangzhou Evernew's Subsidy Rate

Commerce correctly applied an adverse inference to Hangzhou Evernew in calculating Hangzhou Evernew's subsidy rate because as the record evidence demonstrates, Hangzhou Evernew was required to prepare audited financial statements under Chinese law and binding

accounting standards and did not.  *See* List's Comments on XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164); Petitioner's Comments on Hangzhou Evernew's First SQR at 3, (P.R. 4576381-01), Attachment 1; Hangzhou Evernew's Fifth SQR at 5, APPX 2122.  Thus, Hangzhou Evernew did not provide to Commerce documents it was obligated to have prepared.

### A.    Legal Standard

Provided that "necessary information is not available on the record," or a party (1) withholds requested information, (2) fails to provide information by established deadlines or in the form or manner requested, (3) significantly impedes the review, or (4) provides information that cannot be verified, if Commerce finds that a respondent failed to cooperate by not acting "to the best of its ability to comply with a request for information," it may apply an adverse inference in its selection of facts otherwise available.  19 U.S.C. § 1677e(b).

A respondent's failure to cooperate to the "best of its ability" is "determined by assessing whether {a} respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries."  *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382 (Fed. Cir. 2003).  The standard requires that respondents "conduct prompt, careful and comprehensive investigations of all relevant records that refer or relate to the imports in question."  *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1379 (Fed. Cir. 2016).  Thus, the statutory trigger for an adverse inference "is simply a failure to cooperate to the best of respondent's ability, *regardless of motivation or intent.*"  *Nippon Steel*, 337 F.3d at 1383 (emphasis added).  To then determine whether an adverse inference is warranted, Commerce examines a "respondent's actions and assesses the extent of respondent's abilities, efforts, and cooperation in responding to Commerce's requests for information."  *Id*. at 1382.

**B.      Commerce Properly Determined That Hangzhou Evernew's Failure To Provide Requested Financial Statements Warranted An Adverse Inference**

As explained above, Commerce properly determined that Hangzhou Evernew failed to act to the best of its ability when Hangzhou Evernew failed to provide either audited financial statements or unaudited financial statements with notes.  IDM at 9, APPX2437.  Commerce provided Hangzhou Evernew with multiple opportunities to provide audited financial statements (or unaudited financial statements with notes).  *See* Initial Questionnaire at III-6, APPX1102; First Supplemental Questionnaire at 4, Appx1669; Third Supplemental Questionnaire at 6, APPX1998; and Fifth Supplemental Questionnaire at 4-5, APPX2110-2111.  Despite these opportunities, Hangzhou Evernew maintained that there "was no legal requirement" for it to prepare audited financial statements.

In other words, Hangzhou Evernew's omission of its audited financial statements was not merely a "failure to respond" on its part.  *See Nippon Steel*, 337 F.3d at 1383.  Rather, it was "reasonable for Commerce to expect that" when it asked Hangzhou Evernew to provide either audited financial statements or unaudited financial statements, "more forthcoming responses should have been made" than only providing "balance sheets and income statements" and explaining without reference to any accounting principles or laws that it was "there are no disclosure requirements" for audited financial statements, despite evidence to the contrary.  *See id. Compare* List's Comments on XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164), *and* Petitioner's Comments on Hangzhou Evernew's First SQR at 3, (P.R. 4576381-01), Attachment 1, *with* Hangzhou Evernew's Fifth SQR at 5, APPX 2122.  Because Hangzhou Evernew should have prepared audited financial statements under Chinese law and binding accounting principles, a reasonable conclusion is that Hangzhou Evernew had this

31

information but either through "inattentiveness, carelessness, or inadequate record keeping" or a choice not to provide it, failed to provide it to Commerce. *See Nippon Steel*, 337 F.3d at 1382.

Nevertheless, Hangzhou Evernew argues that Commerce's application of total AFA is unwarranted because "AFA only may be used to fill gaps necessary to complete the factual record and to find that the elements of the statute have been satisfied." Hangzhou Evernew's Br. at 18. Hangzhou Evernew appears to conflate the FA and AFA analysis and references the "best of its ability" standard under the AFA standard only to say that it "tried its best to submit information as accurately as possible. And it responded to every single questionnaire and supplemental questionnaire issued by {Commerce}. Hangzhou Evernew's Br. at 21-22. Commerce understands Hangzhou Evernew's contention to be that Commerce is subjecting Hangzhou Evernew to a "special scrutiny" not present in past proceedings of this *Order* and in other Commerce determinations and thus Commerce acted in an "arbitrary and capricious" manner. *Id.* at 19-20. Hangzhou Evernew also contends that "Commerce's actions were inconsistent internally and self-contradictory" citing Commerce's acceptance of Hangzhou Evernew's financial statements in the companion antidumping administrative review. *Id.* at 20.

**1. Hangzhou Evernew's Difficulty in Satisfying Commerce's Request for Information Is Irrelevant to Commerce's Ability to Apply AFA in This Instance**

Hangzhou Evernew argues that Commerce is applying a "high hurdle" to it in applying AFA for its failure to provide audited financial statements or unaudited financial statements with notes. Hangzhou Evernew Br. at 19. It contends that Commerce's treatment of Hangzhou Xline Machinery & Equipment Co., Ltd. in the *antidumping* investigation demonstrates that it acted to the best of its ability and "consistently maintained to {Commerce} that it provided" the requested financial statements. *Id.* at 20. Here, Commerce correctly determined that Hangzhou

32

Evernew failed to act to the best of its ability when it provided only its "balance sheets and income statements" for 2020, 2021, and 2022, in response to Commerce's request for audited financial statements or unaudited financial statements with notes. *See* First Supplemental Questionnaire at 4, Appx1669; *cf.* Initial Questionnaire at III-6, APPX1102.

Notwithstanding that "high hurdle" is not an actual standard under the statute, Commerce addressed Hangzhou Evernew's reliance on the companion antidumping proceeding (and other antidumping proceedings) in the *Final Results*: "Hangzhou Evernew's reliance on Commerce's determinations in an antidumping proceeding is not necessarily germane to a CVD proceeding because antidumping and CVD proceedings have differing considerations." IDM at 21, APPX2449. Instead, "each administrative review is a separate exercise of Commerce's authority that allows for *different conclusions* based on *different facts* in the record." *Qingdao*, 766 F.3d at 1387. Hangzhou Evernew does not assert anywhere in its brief, that the Chinese law and accounting standards present on this review's record were present in the investigation record. Thus, where there are different facts on this administrative record, it stands to reason that Commerce would make a different determination with respect to whether FA/AFA were appropriate. *See id.*; IDM at 21, APPX2449 ("Commerce is not bound by its prior determinations. Rather, Commerce must make each determination based on the factual record before it.").

In other words, Commerce did not find that Hangzhou Evernew failed to act to the best of its ability when it "consistently maintained to {Commerce} that it provided to Commerce the financial statements it kept in the ordinary course of business." Hangzhou Evernew's Br. at 20. Rather, Commerce found that Hangzhou Evernew had failed to act to the best of its ability when it did not provide audited financial statements or unaudited financial statements with notes

33

despite Commerce's multiple requests for that information, based on record information that suggests Hangzhou Evernew was required to prepare such financial statements *i.e.* should have had audited financial statements on hand. IDM at 9, APPX2437. These requested financial statements also were germane "to determine{ing} whether there were other cross-owned affiliates or usage of other subsidy programs." Hangzhou Evernew's Br. at 23. Indeed, the *Aluminum Foil from China* determinations relied on by Hangzhou Evernew demonstrate as much, wherein Commerce determined usage of the Export Buyer's Credit program by reference to, among other things, financial statements provided by the respondents and the respondents customers. *Aluminum Foil from China 2021 Review* IDM at Comment 1; *Aluminum Foil from China 2022 Review* IDM at Comment 1.

Thus, if there was a "high hurdle" it was only because the record information indicated that Hangzhou Evernew was actually required by Chinese law and accounting standards to meet this "high hurdle." *See* List's Comments on XMT's Affiliation Response at Attachment 1 (P.R. 4527882-01) (art. 164); Petitioner's Comments on Hangzhou Evernew's First SQR at 3, (P.R. 4576381-01), Attachment 1; Hangzhou Evernew's Fifth SQR at 5, APPX 2122.

### 2. *Loper Bright* Does Not Disturb Commerce's *Final Results*

Hangzhou Evernew's final argument is *Loper Bright*'s overturning of *Chevron* "provides further grounds for rejecting Commerce's over-reach in interpreting **the regulations** and applying them to Evernew." Hangzhou Evernew's Br. at 24 (emphasis added). Thus, Hangzhou Evernew concludes that this Court should find that Hangzhou Evernew's balance sheets and income statements are "in accordance with law, pursuant to **19 C.F.R. § 351.402(d)(2)**." *Id.* (emphasis added).

34

In *Loper Bright*, the Supreme Court held that mere ambiguity in the statute is not a delegation of law-interpreting power to the agency and that "{c}ourts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority." *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024) (*Loper Bright*). *Loper Bright*, however, does not eliminate the deferential "substantial evidence" standard. *Loper Bright* expressly reaffirmed that under the APA, "judicial review of agency policymaking and factfinding {is} deferential." *Id.* at 392. Accordingly, Commerce's factual determinations, including those that involve mixed questions of law and fact, require the application of the deferential "substantial evidence" standard. 19 U.S.C. § 1516a(b)(1)(B)(i). Further, *Loper Bright* reaffirmed other forms of deference to the agency such as deference to interpretation of an agency's regulations, which 19 C.F.R. § 351.402(d)(2) is, under *Auer* and *Kisor*. *Loper Bright*, 603 U.S. at 393-94. In any event, Hangzhou Evernew's apparent dispute is a factual one. Hangzhou Evernew merely disagrees with Commerce that its responses were inconsistent and that such responses significantly impeded the proceeding. Thus, notwithstanding Hangzhou Evernew's fundamentally incorrect reading of *Loper Bright*, it is unclear why *Loper Bright* should be relevant for the Court's consideration.

## CONCLUSION

For these reasons, we respectfully request that the Court deny Hangzhou Evernew's motion for judgment upon the agency record, sustain Commerce's final results in all respects, and enter judgment for the United States.

35

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

OF COUNSEL:                                  /s/
RUSLAN KLAFEHN                               NATALEE A. ALLENBAUGH
Attorney                                     Trial Attorney
Office of the Chief Counsel                  U.S. Department of Justice
for Trade Enforcement & Compliance           Civil Division
                                             Commercial Litigation Branch
                                             P.O. Box 480, Ben Franklin Station
                                             Washington, D.C. 20044
                                             Telephone: (202) 507-6058
                                             Email: natalee.allenbaugh@usdoj.gov

May 8, 2026                                  *Attorneys for Defendant United States*

36

**Certificate of Service**

I certify that on May 8, 2026, I caused to be served by appropriate means under Administrative Order 25-01, and with the consent of the parties, copies of Defendant's Confidential Response to Plaintiff's Motion for Judgment Upon the Agency Record.

s/ Natalee A. Allenbaugh
NATALEE A. ALLENBAUGH

**Word Count Certificate of Compliance**

This brief has been prepared in a proportionally spaced type face using Microsoft Word in Times New Roman, 12-point font. In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth therein. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 9,639 words. This certified word count is based on the word count feature in the word processing system used to prepare this brief.

s/ Natalee A. Allenbaugh
NATALEE A. ALLENBAUGH

37