# UNITED STATES COURT OF INTERNATIONAL TRADE

HANGZHOU EVERNEW MACHINERY &
EQUIPMENT COMPANY LIMITED;

    Plaintiff,

     v.

UNITED STATES OF AMERICA;

    Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:

Court No. 25-00151

**PUBLIC VERSION**
Business Proprietary Information
deleted within Brackets [ ] on
Pages 4-5 and 14-15

## REPLY BY PLAINTIFF HANGZHOU EVERNEW MACHINERY & EQUIPMENT COMPANY LIMITED'S TO THE RESPONSES IN OPPOSITION TO PLAINTIFF'S MOTION FOR JUDGMENT ON THE AGENCY RECORD

Respectfully Submitted,

/s/ Camelia C. Mazard
Camelia C. Mazard
Andre P. Barlow
Doyle, Barlow & Mazard PLLC
1825 K St. NW, Suite 950
Washington, DC 20006

Dated: July 10, 2026

*Counsel to Hangzhou Evernew Machinery*
*& Equipment Company Limited*

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II.   SUMMARY OF ARGUMENT ...............................................................................1

III.  ARGUMENTS ........................................................................................................1

A.  Substantial Record Evidence Demonstrates that Commerce's Determination
    Under Review was Not Reasonable nor In Accordance with Law ....................1
    1.  Defendant's Speculation Cannot Establish that "Necessary Information"
        was Unavailable Under 19 U.S.C. § 1677e(a) ..............................................2
    2.  Commerce Failed to Specify Deficiencies in Evernew's Responses and this
        Failure Did Not Permit Evernew to Correct Such Deficiencies ...................5
        a.  Commerce Failed to Comply with 19 U.S.C. § 1677m(d) ...............6
        b.  Commerce Failed to Establish that Evernew Did Not Act to the
            Best of Its Ability ..................................................................................7

B.  Commerce's Application of AFA in the Final Results Was Arbitrary and
    Capricious and Not Supported by Record Evidence ........................................10
    1.  The Authorities Cited by Plaintiff Confirm that Commerce's Use of AFA
        was Unlawful.................................................................................................11
    2.  Commerce Failed to Establish that Chinese Law Required Audited
        Financial Statements .....................................................................................13
    3.  Commerce Failed to Explain Its Final Determination ...............................15

IV.   CONCLUSION .....................................................................................................18

## TABLE OF AUTHORITIES

**Cases**

Baroque Timber Industries (Zhongshan) Co, Ltd. and Riverside Plywood Corp. v. United States,
Slip Op. 26-32 (Ct. Int'l Trade 2026)........................................................................3

BlueScope Steel Ltd. v. United States,
548 F. Supp. 3d 1351 (Ct. Int'l Trade 2021) .................................................. 6-7

Consolidated Edison Co. v. NLRB,
305 U.S. 197 (1938) .............................................................................15

Corinth Pipeworks Pipe Indus. SA v. United States,
154 F.4th 1356 (Fed. Cir. 2025) ..............................................................17

Deacero S.A.P.I. de C.V. v. United States,
353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018), aff'd, 996 F.3d 1283 (Fed. Cir. 2021) ......17

FCC v. Fox Television Stations, Inc.,
556 U.S. 502 (2009) .............................................................................16

Fresh Garlic Producers Ass'n v. United States,
121 F. Supp. 3d 1313 (Ct. Int'l Trade 2015) .................................................17

Gov't of Argentina v. United States,
542 F. Supp. 3d 1380 (Ct. Int'l Trade 2021) .................................................17

Hyundai Steel Co. v. United States,
518 F. Supp. 3d 1309 (Ct. Int'l Trade 2021) ...................................................6

Kumar Industries v. United States,
779 F. Supp. 3d 1329 (Ct. Int'l Trade 2025) ...................................................9

Kumho Tire (Vietnam) Co. v. United States,
741 F. Supp. 3d 1277 (Ct. Int'l Trade 2024) .................................................17

Loper Bright Enterprises v. Raimondo,
603 U.S. 369 (2024) .............................................................................18

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
463 U.S. 29 (1983) ..........................................................................15, 17

Nippon Steel Corp. v. United States,
337 F.3d 1373 (Fed. Cir. 2003) .............................................................8, 10

NTN Bearing Corp. v. United States,
74 F.3d 1204 (Fed. Cir. 1995) .................................................................17

Queen's Flowers de Colombia v. United States,
981 F.Supp. 617 (1997) ..........................................................................3

Sidenor Indus. SL v. United States,
    664 F. Supp. 2d 1349 (Ct. Int'l Trade 2009) .................................................... 9-10

Solvay Solexis S.p.A. v. United States,
    637 F. Supp. 2d 1306(Ct. Int'l Trade 2009) .................................................... 11-13

Ta Chen Stainless Steel Pipe, Inc. v. United States)
    298 F.3d 1330 (Fed. Cir. 2002) ........................................................................3

## Statutes

19 U.S.C. § 1677e ........................................................................................2, 8, 11, 18

19 U.S.C. § 1677m  ..................................................................2-3, 6, 11, 13-14, 17-18

## I.   INTRODUCTION

Plaintiff Hangzhou Evernew Machinery & Equipment Company Limited ("Evernew" or "Plaintiff") hereby submits its reply to the Responses filed by Defendant and Defendant-Intervenor.  The Defendant filed its Confidential Response on May 8, 2026 in Opposition to the Motion for Judgment on the Agency Record submitted by Plaintiff.  *See* Def. Resp. to P's Motion for J. on the Agency Record (May 8, 2026), ECF No. 42 ("Def. Br.").  Defendant-Intervenor ("Petitioner") filed a Confidential Response on June 11, 2026.  *See* Resp. Brief of Def-Intervenor List Industries, Inc. (Jun. 11, 2026), ECF No. 50 ("Def-Interv. Br.").

## II.   SUMMARY OF ARGUMENT

The United States Department of Commerce ("Commerce") applied a total adverse facts available rate ("AFA") to Evernew in its second administrative review of the countervailing duty ("CVD") order on the Certain Metal Lockers and Parts Thereof from the People's Republic of China due to its lack of audited financial statements or unaudited financial statements with notes. Plaintiff provided to Commerce the financial statements it kept in the ordinary course of business and did not maintain financial statements in either of the forms requested.  Commerce's determination was not in accordance with law, was not reasonable, was arbitrary and capricious, and was not supported by record evidence.  Plaintiff requests this court to rule in its favor and asks for a remand of the results of the second administrative review.

## III.   ARGUMENTS

### A. Substantial Record Evidence Demonstrates that Commerce's Determination Under Review was Not Reasonable nor In Accordance with Law

First, Defendant argues in its response that "Commerce properly determined that there was necessary information missing from the record, that Hangzhou Evernew withheld information, that Hangzhou Evernew failed to provide timely information, and in the form and

manner requested, and that Hangzhou Evernew significantly impeded the investigation.'" (Def. Br. at 11; *see also id.* at 13, 16-17, 21-23, 29, 31, 35 and 37.)  However, the record instead shows that Plaintiff timely responded to every questionnaire and Defendant failed to identify any "necessary information" actually missing from the record. Instead, Defendant relies on Commerce's speculation that additional affiliates or subsidy programs might exist, even though Commerce successfully calculated a company-specific subsidy rate from the same record at the preliminary stage.

Commerce's application of AFA was unlawful for two reasons: (1) necessary information was not missing from the record; and (2) Commerce failed to specify deficiencies in Evernew's responses and this failure did not permit Evernew to correct such deficiencies.  Commerce's approach effectively shifts the burden to Evernew to disprove the existence of an unidentified affiliate or program, which is an impossible showing to make because a respondent cannot furnish evidence of something it does not have and Commerce never named. Nothing in the record identifies what, if anything, Commerce believes Evernew actually omitted.

### 1. Defendant's Speculation Cannot Establish that "Necessary Information" was Unavailable Under 19 U.S.C. § 1677e(a)

Defendant's position is that because Evernew did not provide audited financial statements, Commerce could not verify Evernew's affiliation, cross-ownership or program usage, and that the entire record therefore was unreliable. (Def. Br. at 13-27; *see also* Def-Interv. Br. at 7 (adopting Defendant's argument by reference)).  That position does not withstand scrutiny.  Commerce's determination rests on speculation rather than record evidence.  19 U.S.C. § 1677e(a)(1) (stating that Commerce may make determinations on the basis of facts available "subject to" the requirements of § 1677m(d)).

2

Commerce never identified a single omitted affiliate, omitted subsidy program, inaccurate questionnaire response, or false financial figure. Commerce stated only that without audited statements, it could not "determine with certainty whether there were other cross-owned affiliates or usage of other subsidy programs." *Certain Metal Lockers and Parts Thereof from the People's Republic of China: Final Results and Final Rescission, in Part, of Countervailing Duty Administrative Review; 2022*, 90 Fed. Reg. 25,023 (Dep't of Commerce June 13, 2025) (P.R. 218),[1] and the accompanying Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Certain Metal Lockers and Parts Thereof from the People's Republic of China; 2022 (signed June 6, 2025) ("IDM") at 9 (P.R. 214). Instead of identifying a specific omission, Commerce inferred that because audited financial statements were unavailable, other information could have been withheld. That is speculation, not substantial evidence. Speculation, however, is not support for a finding. Commerce has a "statutory obligation to provide respondents with a chance to remedy deficient submissions." *Ta Chen Stainless Steel Pipe, Inc. v. United States*, 298 F.3d 1330, 1344 (Fed. Cir. 2002) (citing 19 U.S.C. § 1677m(d) (1994)); *see also Queen's Flowers de Colombia v. United States*, 21 CIT 968, 980, 981 F.Supp. 617, 628 (1997) ("alleged response deficiency cannot support application of {AFA} where the information sought was apparently never requested").

In *Baroque Timber Industries (Zhongshan) Co, Ltd. and Riverside Plywood Corp. v. United States* (Slip Op. 26-32) (Ct. Int'l Trade Apr. 7, 2026), the Court sustained in part and remanded in part Commerce's final results in the 11th administrative review of the CVD order on multilayered wood flooring from China. The plaintiffs, a Chinese producer/exporter and its

---

[1] In accordance with Chambers Procedures Section 2(c)(5), documents in the administrative record are cited by their confidential and/or public record number (*i.e.,* "(C.R.__)" and "(P.R.__)") provided in the Index to the Administrative Record filed with the Court on Sep. 22, 2025 (ECF No. 27).

3

U.S. affiliate, contested Commerce's use of AFA and the resulting subsidy rate calculations. *Id.* at 2. While the Court upheld all other aspects of Commerce's final results, it found that Commerce improperly applied AFA in part. *Id.* at 25. This Court explained that Commerce did not adequately demonstrate that the respondents failed to cooperate to the best of their ability. The Court also criticized Commerce for failing to adequately justify the significance of the identified deficiencies or explain how the adverse rates selected reasonably reflected the missing information. *Id.* at 21. As a result, the Court remanded the issues concerning the use of AFA and the related subsidy calculations to Commerce for further explanation or reconsideration.

Using the record at hand, Commerce already calculated a company-specific subsidy rate of 15.35% for Evernew at the preliminary stage. *See* Mem. "Preliminary Calculation Memorandum for Hangzhou Evernew Machinery & Equipment Company Limited (Sep. 12, 2024) at 2 ("*Preliminary Results*") (P.R. 194; C.R. 152). However, neither Defendant nor Commerce ever explained why the same record that was sufficient to calculate that rate became insufficient by the time of the *Final Results*. Nor did Defendant nor Commerce explain why the contemporaneous accounting records Evernew actually submitted, including its trial balance, general ledger, tax returns, and electricity worksheets, among other business records, could not be used under 19 U.S.C. §1677m(e). *See* Evernew's Sec III Suppl. QR – Part 1 (May 31, 2024) ("Evernew 1st Supp QR P.1") at Ex. S-6 (trial balance and sub-ledgers) (P.R. 149; C.R. 100); Evernew's Sec III Suppl. QR – Part 2 (May 31, 2024) ("Evernew 1st Supp QR P.2") Exs. S-22-S-23 (material) (P.R. 150; C.R. 105).

Instead, the record demonstrated that Evernew and Zhejiang Yinghong [



]. *See* Evernew's Sec. III Aff. QR (Mar. 6, 2024) at App 2. (P.R. 106; C.R. 8).

Consequently, Evernew's affiliate structure was [

], which already were on the administrative record. *See* Evernew's

Response to the Remaining Part of Sec. III QR – Part 11 (Apr. 19, 2024) at Ex. 4-Y ("Sec. III

QR") (P.R. 128; C.R. 75); *see also* Evernew 1st Supp QR P.1 at Ex. S-10 (P.R. 149; C.R. 150).

Thus, Commerce's assertion that it could not verify Evernew's affiliation structure

without a separate audit report was unwarranted. The accounting records for Evernew's subsidy

programs, including its non-business revenue, tied to the non-operating income reported in the

tax return submitted to the government. *See* Sec. III QR P.6 at Exs. 3-E and V-EN-2.1. (P.R.

123; C.R. 57). The missing notes therefore did not justify total AFA - leaving Commerce's

assertion unwarranted that without Evernew's audited financial statements, "usage of other

subsidy programs" cannot be determined.  IDM at 9 (P.R. 214).

### 2. Commerce Failed to Specify Deficiencies in Evernew's Responses and this Failure Did Not Permit Evernew to Correct Such Deficiencies

Commerce applied total AFA program-by-program, substituting the highest available rate

for every subsidy program, even though Evernew documented those programs with detailed

accounting records. Evernew placed on the record its trial balances, general ledgers, and

program-specific sub-ledgers, together with the underlying source documents for each program.

*See* Evernew 1st Supp. QR P.1 at Ex. S-6 (P. R. 149; C.R. 100).  It also documented its purchases

of the input materials alleged to have been provided for less than adequate remuneration through

input-purchase worksheets and purchase sub-ledgers. *See* Evernew 1st Supp. QR P.2 at Ex. S-16-

S-21 (P. R. 150; C.R. 104).  Evernew also documented its electricity purchases through its State

Grid Corporation of China electricity bills and the corresponding reconciling records. *Id. at* Ex.

S-22 and S-23 (P. R. 150; C.R. 105). And Evernew documented its income-tax and research-and-

development programs through its submitted program exhibits. *See* Evernew's 5th Supp. QR at Ex. S5-2.1 and Ex. S5-2.2 series (Aug. 21, 2024) (P.R. 188; C.R. 148-149).

Commerce used that information to calculate a program-specific rate of 15.35% at the preliminary stage, and the same information remained on the record at the final stage. Commerce did not identify any specific program for which necessary information actually was missing. Instead, it discarded Evernew's program data wholesale because it had rejected Evernew's financial statements. The use of total facts available however, was not warranted. At most, an adverse inference could apply to a specific program for which necessary information genuinely was absent, not to every program that Evernew had documented and that Commerce itself had calculated only weeks earlier. A rate built by substituting the highest available rate for programs that Evernew documented bears no rational relationship to its actual subsidization and cannot be sustained.

### a.  Commerce Failed to Comply with 19 U.S.C. § 1677m(d)

Repeated requests for the same document are not equivalent to identifying a statutory deficiency under 19 U.S.C. § 1677m(d). *See BlueScope Steel Ltd. v. United States*, 548 F. Supp. 3d 1351, 1368 (Ct. Int'l Trade 2021) ("*BlueScope*") ("{b}roadly drawn initial or supplemental questionnaires may not sufficiently place a respondent on notice of the nature of the deficiency, and deprive it of the opportunity to remedy that deficiency") (quoting *Hyundai Steel Co. v. United States*, 518 F. Supp. 3d 1309, 1322 (Ct. Int'l Trade 2021)). Once Commerce determines a response to be deficient, Section 1677m(d) requires it to inform the respondent of the nature of the deficiency and to afford a reasonable opportunity to remedy or explain it before declining to use the information.  19 U.S.C. §1677m(d); *see also BlueScope*, 548 F. Supp. 3d at 1359.

6

*BlueScope* does not stand merely for the proposition that issuing a supplemental questionnaire is enough. The question is whether Commerce clearly informed the respondent what, specifically, it considered deficient, and what consequence would follow if the deficiency were not cured. Nothing in the record informed Evernew that Commerce considered the absence of an audit report to render its entire financial system unverifiable, such that a continued inability to provide one would result in the rejection of the entire record and the imposition of total AFA. Instead, Commerce simply repeated the same request for the same document across four separate submissions, from the Initial Questionnaire Response through the fifth supplemental questionnaire, without ever notifying Evernew of that consequence. *See* Evernew 1st Supp. QR at 5 (P.R. 149; C.R. 90); Evernew 3d Supp. QR at 6 (P.R. 171; C.R. 118); Evernew 5th Supp. QR at 5 (P.R. 188; C.R. 143).

Indeed, after the *Preliminary Results* relied on Hangzhou Evernew's financial statements to calculate a rate, Commerce issued a sixth supplemental questionnaire that asked only about the Tax Offsets for Research and Development program and the correct tax year. Commerce never asked Evernew to prepare or submit audited statements, or statements with notes. Evernew 6th Supp. Questionnaire (Oct. 8, 2024) (P.R. 199; C.R. 155).

Because Commerce neither identified the supposed deficiency as one that Evernew was required to fix nor gave Evernew an opportunity to remedy it, Commerce lawfully could not resort to facts available. This defect is independent of the merits and warrants remand on its own. Even assuming arguendo that Commerce could resort to facts available, Defendant still cannot justify Commerce's application of an adverse inference.

    **b.**  **Commerce Failed to Establish that Evernew Did Not Act to the Best of its Ability**

7

An adverse inference under 19 U.S.C. § 1677e(b) is permissible only where a respondent "has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b). That standard asks whether the respondent put forth its maximum effort, but it "does not require perfection." *See Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382-83 (Fed. Cir. 2003). A respondent's mere inability to produce what it does not have is not a failure to cooperate.

Evernew put forth its maximum effort. It answered every questionnaire on time, and provided the authentic financial statements it kept in the ordinary course of business. A respondent cannot withhold a document that it does not have. Moreover, Evernew's inability to place additional supporting legal authority on the record was a result of Commerce's own new-factual-information ("NFI") deadline, which by the time of the fifth supplemental questionnaire barred further factual submissions. *See* Evernew 5th Supp. QR at 4 n.3 (Commerce noting the deadline for NFI passed) (P.R. 188; C.R. 143). This obstacle was created by Commerce itself, not a lack of effort on Evernew's part.

Defendant's charges that Evernew gave "inconsistent" answers, and Defendant-Intervenor's allegations that Evernew made a "belated concession", mischaracterize responses that in fact were consistent. (*See e.g.,* Def. Br. at 29-35 and Def-Interv. Br. at 9.) Since its Initial Questionnaire Response onward, Evernew maintained the same position - namely that it is not required, in the ordinary course of its business, to maintain audited financial statements or unaudited statements with notes.

In its first supplemental response, Evernew explained that a company must obtain an audit only when it met the special conditions provided by law, and that Evernew did not meet those conditions. *See* Evernew 1st Supp. QR at 5 (P.R. 149; C.R 90). In its third supplemental

response, Evernew reiterated that Article 164 did not require every company's financial reports to be audited, and that there was no legal requirement for Hangzhou Evernew to keep such reports. *See* Evernew 3d Supp. QR at 6 (P.R. 171; C.R. 118). In its fifth supplemental response, Hangzhou Evernew acknowledged that the "Accounting Standards for Small Business" were binding on it, but explained in the same answer that those Standards govern only external reporting and do not require notes to be kept in daily internal accounting, and that notes are necessary only when the company conducts activities involving public participation, such as bidding. Evernew 5th Supp. QR at 5 (P.R. 188; C.R. 143). That acknowledgment did not contradict Evernew's earlier answers, but served as further explanations on the dispositive point that Evernew was not required to keep the documents Commerce demanded, thus, its position never changed.

Nor does Defendant-Intervenor's reliance on *Kumar Industries* advance its position. *See Kumar Industries v. United States*, 779 F. Supp. 3d 1329 (Ct. Int'l Trade 2025). In *Kumar Industries*, the Court sustained total AFA where the respondent attempted to prove non-affiliation by creating charts solely for the proceeding, because those self-made, unsubstantiated charts added nothing reliable to the record. This case is different. Evernew did not fabricate documents for Commerce. It submitted the genuine original records it kept in the ordinary course of business.

And the *Sidenor* case cited by Defendant-Intervenor for the proposition that Commerce may treat records created outside the normal course of business as unreliable, does not change this conclusion. In *Sidenor*, the respondent failed to reconcile its reported costs to its normal-course accounting records at all, leaving Commerce with no assurance that the reported data was

complete and accurate. *Sidenor Indus. SL v. United States*, 664 F. Supp. 2d 1349, 1357 (Ct. Int'l Trade 2009).

Evernew's situation is the opposite. Its financial statements reconciled to its government-stamped tax returns. Evernew's offer to obtain a genuine audit, or to prepare notes in accordance with the applicable accounting standards, if Commerce required them, was not an offer to fabricate self-serving records for this proceeding, but an offer to have its existing, reconciled records reviewed formally.

Nor does the fact that its affiliate, Zhejiang Yinghong, obtained an audit prove that Evernew was under the same legal duty. Defendant's contention that Evernew's "difficulty" in satisfying the request is irrelevant and also misses the mark. The obstacle here was not difficulty but impossibility, because the audited and noted statements did not exist, and *Nippon Steel* does not require a respondent to produce documents that it neither maintains nor is required to maintain. *Nippon Steel*, 337 F.3d at 1382-83. There was no failure to cooperate, and the adverse inference cannot stand.

Even assuming arguendo that Commerce properly could draw an adverse inference from Hangzhou Evernew's responses, neither Defendant's brief nor Defendant-Intervenor's brief address Commerce's broader legal errors.

### B. Commerce's Application of AFA in the Final Results Was Arbitrary and Capricious and Not Supported by Record Evidence

Defendant spends considerable time in its response brief arguing that Commerce's application of AFA also was warranted "because despite being required to have prepared audited financial statements, Evernew did not prepare such statements or at least did not submit them to Commerce. Indeed, rather than provide straightforward answers, Evernew provided inconsistent explanations for why it did not have to or did not provide the requested financial

10

statements to Commerce." (Def. Br. at 11.) However, Defendant fails to demonstrate in its brief how Plaintiff failed to cooperate to the best of its ability. And Defendant also fails to justify Commerce's reversal from the Preliminary Results to the Final Results or to show that Commerce complied with the requirements of 19 U.S.C. §§ 1677e and 1677m before applying total AFA.

### 1. The Authorities Cited by Plaintiff Confirm Commerce's Use of Facts Available was Unlawful

Instead, in response to the authorities Evernew cited, Defendant argues that the *Aluminum Foil from China* determinations support Commerce and that *Solvay Solexis* does not undermine Commerce. Each argument is incorrect, and each authority in fact confirms that Commerce's use of AFA was unlawful.

First, the *Aluminum Foil from China* determinations support Evernew, not Commerce. Defendant contends that Commerce accepted unaudited financial statements in those determinations only because the customer's financial information was consolidated with an audited parent. That argument reads into Commerce's reasoning a limitation that is not there. In the 2021 review, Commerce stated the governing practice plainly: "it is Commerce's practice to request audited financial statements, but Commerce will accept unaudited financial statements in lieu of audited statements when the respondent has a reasonable explanation." *Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2021*, 88 Fed. Reg. 75,267 (Nov. 2, 2023), and accompanying IDM at 15 (hereinafter "*2021 Aluminum Foil from China*"). Commerce further confirmed that it "would accept unaudited financial statements if audited financial statements were unavailable." *2021 Aluminum Foil from China* at 12.

11

In the 2022 review, Commerce reached the same result, finding, after "carefully considering the record and past practice," that the respondent's submitted "unaudited balance sheet and income statement" provided a sufficient basis to determine the respondent's non-use of the program. *Certain Aluminum Foil from the People's Republic of China: Final Results of Countervailing Duty Administrative Review; 2022*, 89 Fed. Reg. 88,957 (Nov. 12, 2024), and accompanying IDM at 17. The consolidated-parent circumstance that Defendant emphasizes simply was the reasonable explanation offered by the respondent in that case - not a precondition that Commerce required.  Evernew also offered its own reasonable explanation - namely that Chinese law did not require it to obtain an audit.  Under the very practice Commerce applied in *Aluminum Foil from China* determinations, Commerce was required to accept Evernew's statements, not to discard them and resort to total facts available.

Second, *Solvay Solexis* also undermines Commerce's decision. Defendant argued that referencing *Solvay Solexis* was inappropriate because the respondent there also possessed audited statements and that the case arose in an antidumping proceeding.  (Def. Br. at 21-24). Neither point withstands scrutiny.

In *Solvay Solexis*, the respondent submitted both unaudited statutory statements prepared under Italian Generally Accepted Accounting Principles and audited statements prepared under International Financial Reporting Standards, and Commerce chose to rely on the unaudited statements because they provided the more accurate financial picture. *Solvay Solexis S.p.A. v. United States*, 637 F. Supp. 2d 1306, 1307-08 (Ct. Int'l Trade 2009).  This Court sustained that choice, holding that "while there is a preference toward audited statements, Commerce's ultimate purpose is to acquire the most complete and accurate financial picture of the company," and that "unaudited statements are accepted by Commerce when they are prepared in the normal course

12

of business, and not created specifically for a dumping proceeding." *Id.* at 1309. That the respondent also held audited statements does not support Defendant's argument. On the contrary, it establishes Evernew's position. Commerce relied on the unaudited statements even when audited statements were available, which shows that audited status is a preference and not a prerequisite.

The antidumping setting is likewise immaterial, because the principle established in *Solvay Solexis* is not limited to antidumping proceedings, and 19 U.S.C. § 1677m(e) independently requires Commerce to use timely, verifiable information in CVD reviews. Evernew's unaudited statements were prepared in the ordinary course of business, were not created for this proceeding, and reconciled to its government-stamped tax returns. They supply precisely the complete and accurate financial picture that *Solvay Solexis* required.

Defendant also contends that even if Evernew's figures could be verified against its tax returns, that verification "would only confirm the numbers with respect to Evernew, but not any companies or programs it failed to report." (Def. Br. at 24). The premise of that argument is that Evernew failed to report some company or program, but Commerce never identified any such company or program. *See* IDM at 9 (P.R. 214). As explained above, that concern was speculative. A concern about hypothetical, unnamed affiliates cannot transform verifiable, reconciled financial data into necessary information that is "missing" from the record.

### 2. Commerce Failed to Establish that Chinese Law Required Audited Financial Statements.

Defendant argues that "Commerce observed that Hangzhou Evernew's affiliate, which also did not meet the criteria that purportedly would require a company in China to prepare audited (or unaudited) financial statements, provided audited financial reports with notes". (Def. Br. at 9). However, although Evernew's affiliate submitted the financial records it maintained in

13

its ordinary course of business, Evernew repeatedly explained why the requested audited financial statements or notes did not exist.

Defendant's argument relies on Article 164 of the Company Law, but Article 164 only states that financial reports "shall be audited by an accounting firm according to the law". (emphasis added). The qualifier "according to the law" matters. On its face, the provision does not require every enterprise to obtain an audit. It requires an audit where other law so provides - and the record does not show that standard to be the case for a small trading company such as Evernew.

The only record material purporting to establish a universal audit obligation is a private commercial website, which asserts that "a full annual audit is also required of every company registered in China." IDM at 20 (P.R. 214); *see also* Petitioner's Comments on Evernew's Supplemental Questionnaire Response (June 11, 2024) at 3 (citing https://fdichina.com/) (P.R. 153; C.R. 106). A commercial website is not reliable evidence of the content of foreign law, and it certainly cannot constitute substantial evidence of a legal mandate.

Defendant-Intervenor's reliance on the [

] fares no better. (Def-Interv. Br. at 5). [


]. Evernew's 5th Supp. QR at 5 (P.R. 188; C.R. 143). And even if notes technically were required, 19 U.S.C. §1677m(e) barred Commerce from discarding the balance sheets and income statements that Evernew provided already, which reconciled to its government-stamped tax returns and therefore were usable and verifiable. In fact, the affirmative record evidence cuts the other way. Evernew's tax return

14

marked [

]. *See* Evernew's 5th Supp. QR at 4 (P.R. 188; C.R. 143).

Petitioner's own evidence affirms this point. In its own submission, Petitioner acknowledged that the 2013 annual-inspection notice it placed on the record concerns <u>corporate registration</u>, not financial reporting. *See* Petitioner's Comments on Evernew's 3d Supp. QR (Aug. 8, 2024) at 4-5 (emphasis added) (P.R. 181; C.R. 132). Viewed on the record as a whole, as *Consolidated Edison* requires, a partial statutory excerpt and a commercial website, set against this contrary record evidence, is not "substantial evidence on the record" to find that Chinese law mandated the statements Commerce demanded. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) ("Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

### 3. Commerce Failed to Explain Its Final Determination.

Defendant also stated that Commerce "reconsidered" the record. Def. Br. at 9 (Commerce "reconsidered its reliance on Hangzhou Evernew's financial report"); *see also* IDM at 23 (P.R. 214). Such a statement merely describes that Commerce reached a different conclusion. It does not explain why the same evidentiary record that supported Commerce's preliminary subsidy calculation suddenly became incapable of supporting any company-specific rate.

An agency's action is arbitrary and capricious when it reverses course without a reasoned explanation. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*") (an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice

made"). Such a reasoned explanation ordinarily requires the agency to "display awareness that it is changing position" and to have "good reasons" for the new policy. *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009) ("*Fox Television*"). At the preliminary stage of this review, Commerce used Evernew's own financial statements to calculate a company-specific subsidy rate of 15.35%. *Preliminary Results* (P.R. 194; C.R. 152). In the *Final Results*, on the same record, with no new factual information, Commerce assigned Evernew a rate of 220.95% instead. *See* Final Calculation Memorandum for Hangzhou Evernew Machinery & Equipment Company Limited (June 6, 2025) at 1 (P.R. 215; C.R. 161-162). Commerce never explained why a record adequate to calculate a company-specific rate at the preliminary stage became incapable of supporting any other rate by the Final Results.

Commerce repeatedly insists it was entitled to reconsider the record between the Preliminary and Final Results. Evernew does not dispute that proposition. The problem is that Commerce never adequately explained why the same record that supported a calculated subsidy rate at the preliminary stage suddenly became incapable of supporting any company-specific rate at the final stage. Commerce's stated reason for reversing itself was that since the Preliminary Results, it had reconsidered its position on the matter of Evernew's financial statements and its ability to apply AFA based on gaps in the record, and determined that it agreed with Petitioner. IDM at 23 (P.R. 214). Such "reconsideration" was a bare change of view - not an explanation grounded in any new or different record evidence. Importantly, it does not display the reasoned awareness of a changed position that *Fox Television* requires.

The authorities cited by Defendant and Defendant-Intervenor do not excuse that failure. Although the cases they cite hold that Commerce may change its position between the preliminary and final results; none of them hold that Commerce may do so without explaining

16

why. *See NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995); *Gov't of Argentina v. United States*, 542 F. Supp. 3d 1380, 1391 (Ct. Int'l Trade 2021); *Kumho Tire (Vietnam) Co. v. United States*, 741 F. Supp. 3d 1277, 1300-01 (Ct. Int'l Trade 2024); *Deacero S.A.P.I. de C.V. v. United States*, 353 F. Supp. 3d 1303 (Ct. Int'l Trade 2018), aff'd, 996 F.3d 1283 (Fed. Cir. 2021); *Fresh Garlic Producers Ass'n v. United States*, 121 F. Supp. 3d 1313 (Ct. Int'l Trade 2015). Defendant's own authorities actually confirm that such a change is permissible only so long as Commerce explains the reasoning for the change and its decision is supported by substantial evidence and in accordance with law. *See e.g., Gov't of Argentina*, 542 F. Supp. 3d at 1391 (internal quotation marks and citation omitted).

*Corinth Pipeworks* - another case in which total AFA was applied for the first time in final results - is no different because the respondent there failed to provide usable and reliable information. *Corinth Pipeworks Pipe Indus. SA v. United States*, 154 F.4th 1356, 1370 (Fed. Cir. 2025). To the contrary, Evernew's data reconciled to its government-stamped tax returns. Nothing on the record changed between the Preliminary and Final Results – Evernew's position was consistent from the outset, and no NFI entered the record. The shift from 15.35% to 220.95% therefore cannot be traced to anything Evernew did -- or failed to do. It reflects only Commerce's unexplained change of mind, which is precisely what *State Farm* forbids.

The timing of Commerce's reversal compounds that arbitrariness. Commerce possessed, from an early stage, the very facts on which it ultimately rested its resort to total facts available. If Commerce believed those facts warranted "facts available", 19 U.S.C. ¶ 1677m(d) obligated it to identify the deficiency and afford Evernew an opportunity to remedy or explain it, rather than to require Evernew to answer four supplemental questionnaires on the same point then reverse course without new information.

17

Nor can Defendant avoid this failure by invoking deference. Under *Loper Bright*, courts exercise independent judgment on whether Commerce stayed within the limits of 19 U.S.C. §§ 1677e and 1677m. *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 412 (2024). No measure of deference can substitute for the reasoned explanation that Commerce never gave.

## IV.    CONCLUSION

For the reasons stated above, we respectfully request that this Court hold unlawful Commerce's *Final Results* and remand this action to Commerce for redetermination with instructions to find that Plaintiff's submission of unaudited financial statements without notes during the POR was in accordance with law, and respectfully requests that Commerce recalculate Plaintiff's CVD margin consistent with this Court's opinion.

                                        Respectfully Submitted,

                                        /s/ Camelia C. Mazard
                                        Camelia C. Mazard
                                        Andre P. Barlow
**Dated**: July 10, 2026                Doyle, Barlow & Mazard PLLC
                                        1825 K St. NW, Suite 950
                                        Washington, DC 20006

                                        *Counsel to Hangzhou Evernew Machinery &*
                                        *Equipment Company Limited*

18

## Word Count Certificate of Compliance

This brief has been prepared in a proportionally spaced type face using Microsoft Word 2016 in Times New Roman, 12-point font.

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that this brief complies with the word limitations set forth therein. Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains 5934 words. This certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Camelia C. Mazard
Camelia C. Mazard
Andre P. Barlow

*Counsel to Hangzhou Evernew Machinery & Equipment Company Limited*
Doyle, Barlow & Mazard PLLC
1825 K St. NW, Suite 950
Washington, DC 20006

Dated: July 10, 2026